RAMONA L. MITCHELL, PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10891–10.  Filed April 3, 2012.

In 2003 P contributed a conservation easement over 180 acres of unimproved land to a qualified organization. The purchase of the unimproved land was seller financed. After a downpayment, P executed a promissory note for the remaining payments secured by a deed of trust on the unimproved land. P failed to have the mortgagee subordinate the deed of trust to the conservation easement deed until two years later, in 2005. P claimed a charitable contribution deduction on her 2003 Federal income tax return. I.R.C. sec. 170 allows a deduction for a "qualified conservation contribution". A qualified conservation contribution must be made exclusively for conservation purposes. I.R.C. sec. 170(h). A contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity. I.R.C. sec. 170(h)(5)(A). Pursuant to sec. 1.170A–14(g)(2), Income Tax Regs., no deduction is permitted for an

324

interest in property which is subject to a mortgage unless the mortgagee subordinates its rights in the property to the right of the qualified organization to enforce the conservation purposes of the gift in perpetuity. P argues she has met the requirements of sec. 1.170A–14(g)(2), Income Tax Regs., and is eligible for a charitable contribution deduction under I.R.C. sec. 170. R argues that P failed to have the mortgagee subordinate his deed of trust to the conservation easement deed and therefore failed to meet the requirements of sec. 1.170A–14(g)(2), Income Tax Regs., and I.R.C. sec. 170. As part of P's argument that she has met the requirements of sec. 1.170A–14(g)(2), Income Tax Regs., P raises an issue of first impression: whether we must consider the so-remote-as-to-be-negligible standard of sec. 1.170A–14(g)(3), Income Tax Regs., in determining whether P satisfied the requirements of sec. 1.170A–14(g)(2), Income Tax Regs. *Held*: The so-remote-as-to-be-negligible standard of sec. 1.170A–14(g)(3), Income Tax Regs., does not apply to determine whether P satisfied the requirements of sec. 1.170A–14(g)(2), Income Tax Regs. *Held*, *further*, P has not met the requirements of sec. 1.170A–14(g)(2), Income Tax Regs., and is not eligible for the charitable contribution deduction under I.R.C. sec. 170 for 2003. *Held*, *further*, P is not liable for the accuracy-related penalty under I.R.C. sec. 6662.

*Larry D. Harvey*, for petitioner.

*Miles B. Fuller*, *Steven I. Josephy*, and *Joseph A. Peters*, for respondent.

HAINES, *Judge*: Respondent determined a deficiency of $142,600 in petitioner's Federal income tax and an accuracy-related penalty under section 6662(a)[1] and (d) of $28,520 for 2003.[2] The issues for decision after concessions are: (1) whether petitioner is entitled to a charitable contribution deduction with respect to the conservation easement she granted to Montezuma Land Conservancy (Conservancy); (2) if petitioner is entitled to a charitable contribution deduction, the amount of the deduction; and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a) and (d) or alternatively, if we determine petitioner is entitled to a charitable contribution deduction, whether she is liable

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

[2] Respondent first asserted that petitioner is liable for the accuracy-related penalty in his answer. Should we find in favor of petitioner on the first issue below, respondent claims she is liable for a gross valuation misstatement penalty under sec. 6662(h) of $50,973 for 2003.

for the gross valuation misstatement penalty under section 6662(a) and (h).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time petitioner filed her petition, she lived in Colorado.

Charles Mitchell, his wife Ramona L. Mitchell, and their son, Blake Mitchell (Mitchells), resided in Mancos, Colorado, a ranching community established in 1876. Mancos is between Cortez, Colorado, 17 miles to the west, and Durango, Colorado, 30 miles to the east. Highway 160, at the base of the San Juan Mountains and known as the San Juan Skyway, connects the three towns. The towns are in the southwest corner of Colorado in the "Four Corners" area, where the boundaries of Colorado, New Mexico, Arizona, and Utah meet.

The town of Mancos is in the northern part of Mancos Valley. Charles had owned a business in the town which began as a manufacturer of matches but eventually evolved into a manufacturer of erosion and flood control products. Charles had tried to buy 456 acres of ranchland in the southern part of the Mancos Valley from Clyde Sheek for over 20 years. The ranchland was approximately eight miles by road south of the town of Mancos.

In 1998 Sheek finally agreed to sell the northerly 105-acre parcel to the Mitchells for $180,000.[3] The parcel was unimproved; i.e., it had no buildings, only partial fencing, no utilities, and no domestic water. Access was from a two-lane gravel road maintained by the county. The land had been used by Sheek to graze cattle and was not in good condition when the Mitchells purchased it. The property also was used by wildlife for habitat.

The Mitchells installed a two-inch water line from the northern boundary of the 105-acre parcel in 2000 with electrical lines added in 2001–02. The Mancos River channel running through the property was protected from further erosion, and fields were improved. Blake and his wife, Melody, built a home on the 105-acre parcel in 2000. Subse-

---

[3] Montezuma County assessors records describe the parcel as 95 acres. The land records describe it as 105 acres. We will use 105 acres for purposes of the Opinion.

quently a 50- by 100-foot shop and a 900-square-foot guest-house were built on the parcel.

In 2000 Charles sold his business. He again approached Sheek to buy the remaining 351 acres bordering the south boundary of the 105-acre parcel bought in 1998. Sheek agreed to sell the 351-acre parcel in 2001 for $683,000. He did not want all cash. He wanted retirement income. Consequently, after a downpayment of $83,000, the balance of $600,000 was to be paid in installments of $60,000 per year plus interest. A promissory note was signed and secured by a deed of trust recorded in the records of Montezuma County, Colorado, in January 2001.

As a result of the two purchases, the Mitchells owned 456 acres of ranchland in the southern portion of the Mancos Valley (Lone Canyon Ranch). The south and west sides of the Lone Canyon Ranch are bordered by the Mesa Verde National Park (park) where the Anasazi people, the cliffdwellers, had their communities. A portion of the ranch is actually within the park. To the south also is Ute Indian land and to the east is Bureau of Land Management land and a privately owned ranch. Charles and petitioner built their own home at Lone Canyon Ranch in 2001 and 2002.

Charles began having health problems. In December 2002 the Mitchells formed C. L. Mitchell Properties, L.L.L.P., a family limited partnership (partnership).[4] Lone Canyon Ranch was transferred to the partnership, subject to the deed of trust, as were other investments, including a rental property and cash and securities. Although Charles was named the general partner, it soon became evident that he could not carry out his management duties. Consequently, Blake took over the management duties. Charles eventually died of his illness in 2006.

On December 31, 2003, the partnership granted a conservation easement on the south 180 acres of unimproved land to Conservancy. The parties executed a deed of conservation easement in gross. At the time the easement was granted, the deed of trust securing the debt to Sheek was not subordinated to the conservation easement held by Conservancy. From 2003 to 2005 the partnership had the money to

[4] The name of the limited partnership was changed at a later date to Lone Canyon Ranch Limited Liability Limited Partnership.

pay off the promissory note, which the deed of trust secured, at any time. There were no lawsuits, potential or otherwise; all bills were paid; payments on the promissory note to Sheek were current, and casualty insurance was in place. Two years after the conservation easement was granted, Sheek agreed to subordinate his deed of trust to the conservation easement but received no consideration for the subordination. On December 22, 2005, Sheek signed the Subordination to Deed of Conservation Easement in Gross (subordination agreement).

In 2004 the Mitchells hired William B. Love Appraisals, Inc. (Love), to appraise the conservation easement granted to Conservancy as of December 31, 2003. Love determined that the conservation easement had a market value of $504,000. Love issued an appraisal report for the partnership on February 17, 2004 (Love appraisal). The partnership claimed a $504,000 charitable contribution deduction, which flowed through to its two partners, Charles and petitioner, equally. Charles and petitioner claimed a $504,000[5] charitable contribution deduction on their 2003 joint Federal income tax return dated April 13, 2004 (2003 return). Charles and petitioner attached Form 8283, Noncash Charitable Contributions, to their 2003 return along with a copy of the Love appraisal.

A notice of deficiency was mailed to petitioner on February 23, 2010, disallowing her 2003 charitable contribution deduction. Respondent determined that petitioner had not met the requirements of section 170. Alternatively, respondent determined that if petitioner had met the requirements of section 170, the amount of the charitable contribution deduction was $100,100.[6] Petitioner timely filed a petition with this Court on May 12, 2010.

### OPINION

The issues before this Court are whether petitioner made a qualified conservation contribution to Conservancy and if so, whether she substantiated the reported charitable contribution deduction in the manner required by section

---

[5] Because of limitations on itemized deductions claimed on Schedule A, Itemized Deductions, only $447,236 of the charitable contribution deduction could be claimed on the 2003 return.

[6] Respondent in his pretrial memorandum concedes that, if a charitable contribution deduction is allowed, the amount of the deduction is $122,000.

170(f)(8). If we find that petitioner made a qualified conservation contribution and that she substantiated it, we then must determine its value. Finally, we must determine whether petitioner is liable for certain penalties under section 6662.

## I. *Qualified Conservation Contribution*

A taxpayer is generally allowed a deduction for any charitable contribution made during the taxable year. Sec. 170(a)(1). A charitable contribution is a gift of property to a charitable organization, made with charitable intent and without the receipt or expectation of receipt of adequate consideration. *See Hernandez v. Commissioner*, 490 U.S. 680, 690 (1989); *United States v. Am. Bar Endowment*, 477 U.S. 105, 116–118 (1986); *see also* sec. 1.170A–1(h)(1) and (2), Income Tax Regs. While a taxpayer is generally not allowed a charitable contribution deduction for a gift of property consisting of less than an entire interest in that property, an exception is made for a "qualified conservation contribution." *See* sec. 170(f)(3)(A), (B)(iii).

A "qualified conservation contribution" is a contribution (1) of a "qualified real property interest", (2) to a "qualified organization", (3) which is made "exclusively for conservation purposes". Sec. 170(h)(1); *see also* sec. 1.170A–14(a), Income Tax Regs. Respondent concedes that there was a contribution of a qualified real property interest and that at the time of the contribution the Conservancy was a qualified organization under section 170(h)(3). Therefore, we focus on the third requirement; i.e., whether petitioner's contribution of the conservation easement to Conservancy was exclusively for conservation purposes.

A contribution is made exclusively for conservation purposes only if it meets the requirements of section 170(h)(5). *Glass v. Commissioner*, 124 T.C. 258, 277 (2005), *aff'd*, 471 F.3d 698 (6th Cir. 2006). Section 170(h)(5)(A) provides that "A contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity." Section 1.170A–14(g), Income Tax Regs., elaborates on the enforceability-in-perpetuity requirement. Paragraph (g)(1) provides generally that in order for a conservation easement to be enforceable in perpetuity, the

"interest in the property retained by the donor * * * must be subject to legally enforceable restrictions * * * that will prevent uses of the retained interest inconsistent with the conservation purposes of the donation." The various subparagraphs of paragraph (g) set forth many of these legally enforceable restrictions.

Paragraph (g)(2) addresses mortgages and in pertinent part provides that "no deduction will be permitted * * * for an interest in property which is subject to a mortgage unless the mortgagee subordinates its rights in the property to the right of the * * * [donee] organization to enforce the conservation purposes of the gift in perpetuity."

Paragraph (g)(3) is entitled "Remote future event" and addresses events that may defeat the property interest that has passed to the donee organization. It provides that a deduction will not be disallowed merely because on the date of the gift there is the possibility that the interest will be defeated so long as on that date the possibility of defeat is so remote as to be negligible.

Paragraph (g)(6) is entitled "Extinguishment" and recognizes that after the donee organization's receipt of an interest in property, an unexpected change in the conditions surrounding the property can make impossible or impractical the continued use of the property for conservation purposes. Subdivision (i) of paragraph (g)(6) provides that those purposes will nonetheless be treated as protected in perpetuity if the restrictions limiting use of the property for conservation purposes "are extinguished by judicial proceeding and all of the donee's proceeds * * * from a subsequent sale or exchange of the property are used by the donee organization in a manner consistent with the conservation purposes of the original contribution."

Subdivision (ii) of paragraph (g)(6) is entitled "Proceeds" and, in pertinent part, provides:

for a deduction to be allowed under this section, at the time of the gift the donor must agree that the donation of the perpetual conservation restriction gives rise to a property right, immediately vested in the donee organization, with a fair market value that is at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift bears to the value of the property as a whole at that time. * * * For purposes of this paragraph (g)(6)(ii), that proportionate value of the donee's property rights shall remain constant. Accordingly, when a change in

conditions gives rise to the extinguishment of a perpetual conservation restriction under paragraph (g)(6)(i) of this section, the donee organization, on a subsequent sale, exchange, or involuntary conversion of the subject property, must be entitled to a portion of the proceeds at least equal to that proportionate value of the perpetual conservation restriction * * *.

Respondent argues that petitioner's conservation easement was not protected in perpetuity and thus it is not a qualified conservation contribution. Specifically, respondent argues that petitioner failed to satisfy the requirements of section 1.170A–14(g)(2), Income Tax Regs. (subordination regulation), and section 1.170A–14(g)(6)(ii), Income Tax Regs. (proceeds regulation). We will address each of these arguments in turn.

### A. *Whether Petitioner Satisfied the Requirements of the Subordination Regulation*

Respondent argues that the conservation purpose of the donated property is not protected in perpetuity because petitioner failed to meet the requirements of the subordination regulation, which required Sheek to subordinate his deed of trust to the deed of conservation easement. Petitioner argues that Sheek entered into a subordination agreement in 2005 which complies with the requirements of the subordination regulation. Petitioner also argues that in determining whether the requirements of the subordination regulation are met this Court must consider the so-remote-as-to-be-negligible standard in section 1.170A–14(g)(3), Income Tax Regs. Finally, petitioner argues that she entered into an oral agreement with Sheek with respect to the use of Lone Canyon Ranch and that the oral agreement provides the necessary protection required by section 170(h)(1)(c).

### 1. *Whether Petitioner's Obtaining a Subordination Agreement in 2005 Satisfies the Requirements of the Subordination Regulation*

Petitioner claims her grant of a conservation easement to Conservancy satisfies the requirements of the subordination regulation because Sheek subordinated his deed of trust to Conservancy's deed of conservation easement in 2005. Petitioner argues that it is irrelevant that the subordination agreement was signed almost two years after the grant of the

conservation easement because the subordination regulation has no requirement as to when the mortgagee must subordinate its claim to that of the donee organization. Respondent argues that in order to comply with the requirements of the subordination regulation, the mortgagee's rights in the property must be subordinate to the conservation easement on the date the conservation easement is granted. We agree with respondent.

Though the subordination regulation is silent as to when a taxpayer must subordinate a preexisting mortgage on donated property, we find that the regulation requires that a subordination agreement be in place at the time of the gift. In order to be eligible for the charitable contribution deduction for 2003, petitioner had to meet all the requirements of section 170(h) and the underlying regulations, including the requirement that the Sheek deed of trust be subordinate to the conservation easement deed of trust. *See* sec. 1.170A–14(g)(2), Income Tax Regs. Sheek did not subordinate his deed of trust to the conservation easement deed of trust until December 22, 2005. Had petitioner defaulted on the promissory note before that date, Sheek could have instituted foreclosure proceedings and eliminated the conservation easement. The conservation easement was therefore not protected in perpetuity at the time of the gift. As a result, petitioner failed to meet the requirements of section 170(h) and the underlying regulations for 2003.

Petitioner argues that notwithstanding the fact that Sheek's deed of trust took priority over the conservation easement until December 22, 2005, the conservation easement was still protected in perpetuity because the probability of petitioner's defaulting on her promissory note was so remote as to be negligible.

2. *Whether This Court Must Consider the So-Remote-as-To-Be-Negligible Standard When Determining Whether Petitioner Satisfied the Requirements of the Subordination Regulation*

Petitioner argues that we must read the subordination regulation in tandem with the so-remote-as-to-be-negligible standard of section 1.170A–14(g)(3), Income Tax Regs. She argues that the probability of her defaulting on the Sheek

promissory note on December 31, 2003, was so remote as to be negligible. Thus, petitioner argues that possibility should be disregarded under the so-remote-as-to-be-negligible standard in determining whether the conservation easement is enforceable in perpetuity. Respondent argues that the so-remote-as-to-be-negligible standard is irrelevant to our inquiry. We agree with respondent.

a. *Prior Caselaw*

This Court has previously considered on a number of occasions taxpayer arguments about the applicability of section 1.170A–14(g)(3), Income Tax Regs., to the rest of paragraph (g). *Kaufman v. Commissioner*, 136 T.C. 294 (2011) (*Kaufman II*); *Kaufman v. Commissioner*, 134 T.C. 182 (2010) (*Kaufman I*); *Carpenter v. Commissioner*, T.C. Memo. 2012–1; *Simmons v. Commissioner*, T.C. Memo. 2009–208, *aff'd*, 646 F.3d 6 (D.C. Cir. 2011).

In *Kaufman II*, the taxpayers contributed to a donee organization a facade easement on a single-family rowhouse which they owned in a historic preservation district in Boston. At the time of contribution, the property was subject to a mortgage which entitled the mortgagee to a "prior claim" to all proceeds of condemnation and to all insurance proceeds resulting from any casualty of the property. The taxpayers claimed a charitable contribution deduction equal to the value they assigned to the facade easement. The Commissioner disallowed the deduction, because the taxpayers had failed to meet the requirement of section 1.170A–14(g)(6)(ii), Income Tax Regs., that the charity receive a proportionate share of proceeds following judicial extinguishment of the facade easement and a subsequent sale of the property.

The taxpayers argued that section 1.170A–14(g)(6), Income Tax Regs., should be read in tandem with section 1.170A–14(g)(3), Income Tax Regs. The taxpayers hypothesized a very low probability of occurrence of a set of events that would deprive the charity of its proportional share of proceeds following judicial extinguishment of the facade easement and subsequent sale of the property. They concluded that the possibility of such deprivation was "so remote as to be negligible" and, thus, had to be disregarded under the so-

remote-as-to-be-negligible standard in determining whether the facade easement was enforceable in perpetuity.

This Court found that the so-remote-as-to-be-negligible standard does not modify section 1.170A–14(g)(6)(ii), Income Tax Regs. Specifically, we held that

[i]t is not a question as to the degree of improbability of the changed conditions that would justify judicial extinguishment of the restrictions. Nor is it a question of the probability that, in the case of judicial extinguishment following an unexpected change in conditions, the proceeds of a condemnation or other sale would be adequate to pay both the bank and * * * [ the charity]. As we said in * * * [*Kaufman I*], 134 T.C. at 186, the requirement in section 1.170A–14(g)(6)(ii), Income Tax Regs., that * * * [the charity] be entitled to its proportionate share of the proceeds is not conditional: "Petitioners cannot avoid the strict requirement in section 1.170A–14(g)(6)(ii), Income Tax Regs., simply by showing that they would most likely be able to satisfy both their mortgage and their obligation to * * * [the charity]." [*Kaufman II*, 136 T.C. at 313.]

In *Carpenter*, the taxpayers contributed to a donee organization a conservation easement on open land in Colorado. The conservation easement deed allowed the parties to extinguish the conservation easement by mutual written agreement if circumstances arose in the future that would render the purpose of the conservation easement impossible to accomplish. The taxpayers claimed a charitable contribution deduction equal to the value they assigned to the conservation easement. The Commissioner disallowed the deduction, because the taxpayers had failed to meet the requirement of section 1.170A–14(g)(6)(i), Income Tax Regs., that the conservation easement be extinguished by a judicial proceeding.

The taxpayers argued that section 1.170A–14(g)(6)(i), Income Tax Regs., should be read in tandem with section 1.170A–14(g)(3), Income Tax Regs. They claimed that the conditions necessary for extinguishment of the conservation easement were not possible or the possibility was so remote as to be negligible. Thus, the taxpayers argued that the possibility of extinguishment by mutual agreement of the parties had to be disregarded under the so-remote-as-to-be-negligible standard in determining whether the conservation easement was enforceable in perpetuity. This Court, relying on its previous holding in *Kaufman II*, found that the so-

remote-as-to-be-negligible standard does not modify section 1.170A–14(g)(6)(i), Income Tax Regs.

At least one court has applied the so-remote-as-to-be-negligible standard to find that a gift of a facade easement was protected in perpetuity. In *Simmons*, the taxpayer contributed to a donee organization a facade easement on two rowhouses which the taxpayer owned in Washington, D.C. At the time of contribution, the properties were subject to a mortgage. The conservation easement deed provided that the mortgagees subordinate their rights in the properties to the right of the donee and its successors or assigns to enforce the conservation purposes of the easements in perpetuity. The deed also provided that nothing contained in the deed should be construed to limit the donee's right to give its consent to changes in the facade or to abandon some or all of its rights under the deed. The taxpayers claimed a charitable contribution deduction equal to the value they assigned to the facade easements, and the Commissioner disallowed that deduction.

First, the Commissioner argued that the taxpayer had failed to meet the conservation purpose described in section 170(h)(4) because the donee organization had the right not to exercise its obligations under the easement. Second, the Commissioner argued that the requirements of section 1.170A–14(g), Income Tax Regs., had not been met because the restrictions on the easement allowed the donee organization to consent to changes in the facades. Finally, the Commissioner argued that the taxpayer was not entitled to the charitable contribution deduction because she failed to subordinate the mortgage on the property as required by the subordination regulation.

We held that the easements granted to the donee organization were valid conservation easements. The donee's right to consent to changes in the facades was subject to local, State, and Federal law. Section 1.170A–14(d)(5), Income Tax Regs., specifically allows a donation to satisfy the conservation purpose test even if future development is allowed, as long as that future development is subject to local, State, and Federal laws and regulations. Further we held that the taxpayer had satisfied the requirements of the subordination regulation because the mortgagees had agreed to subordinate their interest in the property within the conservation easement deed. We, however, did not address the Commissioner's argu-

ment that the taxpayer failed to meet the conservation purpose because the donee organization had the right to not exercise its obligations under the easements.

The Commissioner appealed, arguing once again that the conservation easement was not protected in perpetuity because the donee organization was free to abandon its right to enforce the restrictions set out in the deed. *Commissioner v. Simmons*, 646 F.3d 6. The Court of Appeals for the District of Columbia Circuit found that the Commissioner had not shown the possibility that the donee would actually abandon its rights. The Court of Appeals noted that the donee had been monitoring easements since 1978, yet the Commissioner had failed to point to a single instance where the donee had abandoned its right to enforce those easements. Relying on the so-remote-as-to-be-negligible standard, the Court of Appeals rejected the Commissioner's argument that the contribution failed the perpetuity requirement because it had concluded that the possibility the donee would abandon the conservation easement was so remote as to be negligible. *Id.* at 10–11.

b. *Our Case*

As discussed above, this Court has previously decided that the so-remote-as-to-be-negligible standard should not be applied when determining whether a taxpayer has met the requirement of section 1.170A–14(g)(6)(i) and (ii), Income Tax Regs. *See Kaufman II*, 136 T.C. 294; *Carpenter v. Commissioner*, T.C. Memo. 2012–1. However, the so-remote-as-to-be-negligible standard has been used to determine whether a conservation deed which allows a donee organization to abandon its rights under the deed is a gift in perpetuity. *See Commissioner v. Simmons*, 646 F.3d 6. We are now presented with an issue of first impression: whether we must consider the so-remote-as-to-be-negligible standard in determining whether petitioner satisfied the subordination regulation.

We briefly discussed the promulgation of section 1.170A–14, Income Tax Regs., in *Kaufman II*. We found that

[t]he drafters of section 1.170A–14, Income Tax Regs., undoubtedly understood the difficulties (if not impossibility) under State common or statutory law of making a conservation restriction perpetual. They

required legally enforceable restrictions preventing inconsistent use by the donor and his successors in interest. See sec. 1.170A–14(g)(1), Income Tax Regs. They defused the risk presented by potentially defeasing events of remote and negligible possibility. See sec. 1.170A–14(g)(3), Income Tax Regs. * * * *They did not, however, consider the risk of mortgage foreclosure per se to be remote and negligible and required subordination to protect from defeasance. See sec. 1.170A–14(g)(2), Income Tax Regs.* * * * [*Kaufman II,* 136 T.C. at 306–307; emphasis added.]

The drafters of section 1.170A–14(g), Income Tax Regs., saw taxpayers defaulting on their mortgages as more than a remote possibility. Therefore they drafted a specific provision which would absolutely prevent a default from destroying a conservation easement's grant in perpetuity.

Similarly the drafters included section 1.170A–14(g)(6)(i) and (ii), Income Tax Regs., to address similar albeit different concerns. We refused to apply the so-remote-as-to-be-negligible standard in both *Carpenter* and *Kaufman II*. Both were cases where the taxpayer attempted to use the so-remote-as-to-be-negligible standard to avoid a specific requirement of the regulations (i.e., the judicial proceeding requirement of section 1.170A–14(g)(6)(i), Income Tax Regs., and the proceeds requirement of section 1.170A–14(g)(6)(ii), Income Tax Regs).

Though the Court of Appeals for the District of Columbia Circuit applied the so-remote-as-to-be-negligible standard in *Simmons*, that case is distinguishable from our case. The Court of Appeals applied the so-remote-as-to-be-negligible standard to defeat a general argument made by the Commissioner as to the conservation easement's grant in perpetuity. The standard was not used to defeat a specific subparagraph of section 1.170A–14(g), Income Tax Regs., as petitioner argues in our case.

Given our prior rulings in this area, we find that the subordination regulation should not be read in tandem with the so-remote-as-to-be-negligible standard. In other words, petitioner cannot avoid meeting the strict requirement of the subordination regulation with respect to the Sheek deed of trust by making a showing that the possibility of foreclosure on that deed of trust is so remote as to be negligible. The requirements of the subordination regulation are strict requirements that may not be avoided by use of the so-remote-as-to-be-negligible standard.

Petitioner argues that *Kaufman II* is distinguishable from this case and instead we should follow this Court's ruling in *Simmons*. Petitioner argues that *Simmons* stands for the proposition that the subordination regulation must be read in tandem with the so-remote-as-to-be negligible standard. As we have explained above, *Simmons* stands for no such thing. The Court of Appeals never addressed the subordination regulation arguments raised in this Court because this Court in *Simmons* held that the mortgage holder had subordinated its mortgage to the conservation easement deed.

3. *Whether Petitioner's Oral Agreement With Sheek Provided the Necessary Protection Required by Section 170(h)(1)(c)*

Petitioner finally argues that in an oral agreement with Sheek the Mitchells agreed that they would not subdivide or develop Lone Canyon Ranch. Petitioner argues that these were the same rights relinquished under the conservation easement deed of trust and thus the oral agreement protects the conservation easement purpose in perpetuity as required by section 170(h)(1)(c) and (5). We disagree. The oral agreement had no effect on Sheek's ability to foreclose on the property and extinguish the conservation agreement had petitioner defaulted on her promissory note. Thus, the oral agreement fails to comply with the requirements of section 1.170A–14(g)(2), Income Tax Regs.

B. *Whether Petitioner Satisfied the Requirements of the Proceeds Regulation*

Having found that petitioner failed to meet the requirements of the subordination regulation, we need not further determine whether petitioner satisfied the requirements of the proceeds regulation to make our decision. Having found that petitioner failed to comply with the requirements of the subordination regulation, we find that petitioner did not make a qualified conservation contribution and thus is not eligible for a charitable contribution deduction for 2003.

## II. *Substantiation Requirement and Value of Charitable Contribution Deduction*

Having found that petitioner failed to comply with the requirements of the subordination regulation and thus is not eligible for a charitable contribution deduction under section 170, we need not address respondent's argument that petitioner failed to meet the substantiation requirements of section 170(f)(8) or inquire into the value of petitioner's claimed charitable contribution.

## III. *Accuracy-Related Penalty*

Respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) for 2003. Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty upon any underpayment of tax resulting from a substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Generally, a taxpayer bears the burden of proving the Commissioner's determinations incorrect. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). However, the Commissioner bears the burden of proof with respect to any new matter raised in the answer. Rule 142(a). Because he first raised the issue in his answer, respondent bears the burden of proof with respect to petitioner's liability for the accuracy-related penalty and must therefore prove that it is appropriate to impose that penalty. Respondent calculated that petitioner understated her income tax by $142,600. Petitioner had reported tax of $351,076 on her 2003 return. The amount of the understatement was substantial because it exceeded the greater of (1) 10% of the tax required to be shown on the return for the taxable year, or (2) $5,000.

The accuracy-related penalty is not imposed, however, with respect to any portion of the underpayment if the taxpayer can establish that she acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664–4(b)(1), Income Tax Regs. Circumstances indicating that a taxpayer acted with reasonable cause and in good

faith include "an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." *Id.*

We found all of petitioner's witnesses to be credible and truthful. Petitioner attempted to comply with the requirements for making a charitable contribution of a conservation easement. Petitioner hired an accountant and an appraiser; however, she inadvertently failed to obtain a subordination agreement from Sheek. That said, upon being made aware of the need for a subordination agreement she promptly obtained one. Given the circumstances, we find that petitioner acted with reasonable cause and in good faith. Therefore we hold that petitioner is not liable for the accuracy-related penalty under section 6662(a) for 2003.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*