T.C. Memo. 2012-345

UNITED STATES TAX COURT

WALTER C. MINNICK AND A.K. LIENHART, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29632-09.                    Filed December 17, 2012.

<u>Tim Alan Tarter</u>, for petitioners.

<u>Anne Ward Durning</u> and <u>Michael R. Harrel</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  In 2006 Walter C. Minnick gave to charity a

conservation easement on his 74-acre parcel of land in the foothills near Boise,

Idaho.  On their joint income-tax returns, Minnick and his wife, A.K. Lienhart,

claimed a charitable-contribution deduction of $389,517 for 2006 and carryover

[*2] charitable-contribution deductions of $148,977 and $402,506, respectively, for 2007 and 2008. In a notice of deficiency for years 2007 and 2008, the IRS disallowed the carryover deductions. The notice determined deficiencies in federal income tax for 2007 and 2008 of $42,306.70 and $140,877, respectively, and 20% accuracy-related penalties under section 6662(a), as increased to 40% under section 6662(h), of $16,922.10 and $56,350.80, respectively. The respondent is referred to here as the IRS. The petitioners are referred to as Minnick and Lienhart. All references to sections are to the Internal Revenue Code of 1986, as amended and in effect at the relevant times.

## FINDINGS OF FACT

Minnick and Lienhart resided in Idaho at the time they filed their petition.

On January 25, 2005, U.S. Bank recorded a mortgage on the 74-acre parcel of land.

On September 5, 2006, the Board of Ada County Commissioners permitted Minnick to subdivide the land into seven single-family residential lots.

On September 7, 2006, Minnick granted a conservation easement on the land to the charitable organization Land Trust of Treasure Valley, Inc. (the "Land Trust"). The terms of the easement prohibited Minnick and any subsequent owner from building on or altering the portions of the land outside the areas designated

[*3] as "building envelopes" for each lot. The portions of the land thus restricted by the easement constituted 80% of the 74-acre parcel. The conservation easement stated: "Grantor [i.e. Minnick] warrants that * * * [he] owns the Property in fee simple and has conveyed it to no other person, and that there are no outstanding mortgages, tax liens, encumbrances, or other interests in the Property that have not been expressly subordinated to the Easement." Contrary to this warranty provision, U.S. Bank's mortgage was not then subordinated to the conservation easement. The conservation easement also provided that Minnick and the Land Trust could amend the terms of the easement if circumstances arose under which an amendment would be "appropriate".

When Minnick and Lienhart filed their original 2006 income-tax return, they did not claim a charitable-contribution deduction for the grant of the conservation easement. Minnick had not yet received a written appraisal of the easement.

On or about December 26, 2007, Minnick and Lienhart filed an amended income-tax return for 2006. On the amended return, they reported that the value of the easement was $941,000. This value was taken from an appraisal by G. Joseph Corlett, who had been hired by Minnick. The amended return reported that the charitable-contribution deduction for the grant of the easement was limited to

[*4] $389,517 for 2006.  The amended return was prepared by Bruce Stratton, a certified public accountant (C.P.A.).  Both Stratton and Minnick intended that Corlett's appraisal be attached to the amended return for 2006, but for some reason the amended return the IRS received did not have the appraisal attached to it.  Minnick never asked Stratton whether he was entitled to the $941,000 deduction, and Stratton did not tell him that he was.  Minnick had worked for a few months as a lawyer near the beginning of his career, spending some time in tax law.  He later went into the building-supply business.  Lienhart was uninvolved in determining whether the conservation easement gave rise to a charitable-contribution deduction.

On their 2007 and 2008 returns Minnick and Lienhart claimed carryover charitable-contribution deductions of $148,977 and $402,506, respectively, for the 2006 grant of the conservation easement.

The IRS issued the notice of deficiency on September 17, 2009.  The reason given by the notice of deficiency for disallowing the carryover deductions was lack of documentation of the value of the contribution.  The IRS no longer challenges the deductions for lack of documentation.

On December 14, 2009, Minnick and Leinhart timely filed a petition with this Court.

**[*5]** On September 12, 2011, Minnick and U.S. Bank executed an agreement under which U.S. Bank subordinated its mortgage to the conservation easement. The effect of this subordination agreement is that the conservation easement will remain in force if U.S. Bank becomes the owner of the land by foreclosure.

The IRS's September 19, 2011 pretrial memorandum asserted that no carryover charitable-contribution deductions should be allowed for the grant of the conservation easement. It asserted the following reasons: (1) the grant of the conservation easement was a condition of receiving permission from the county to subdivide the land; (2) the conservation easement was not protected in perpetuity because (a) the terms of the easement allowed Minnick and the Land Trust to amend the easement by agreement, (b) U.S. Bank's mortgage on the land was not subordinated at the time of the grant, and (c) the easement failed to provide for the allocation of proceeds to the Land Trust in the event the easement was extinguished; (3) Minnick and Lienhart's deduction for the contribution of the easement is limited to the basis allocated to the easement; and (4) the easement was overvalued.

This case was tried in Boise, Idaho, on October 4, 2011. At trial, the IRS moved to amend its answer. The Court took the motion under advisement. On January 5, 2012, the Court granted the motion, allowing the IRS to amend its

[*6] answer to assert that the claimed deductions are not permitted because the requirements of section 170 and the corresponding regulations have not been satisfied and because Minnick and Lienhart have not established that the value of the easement was $941,000.

OPINION

1.  Because U.S. Bank's mortgage was not subordinated to the conservation easement when it was granted, no deduction is permitted for the grant of the conservation easement.

A contribution of a conservation easement is deductible only if the requirements of 26 C.F.R. sec. 1.170A-14 are met.  See sec. 170(f)(3)(A), (B)(iii); 26 C.F.R. sec. 1.170A-14(a) (2012).  26 C.F.R. sec. 1.170A-14(a) (2012) requires that the easement be contributed to "a qualified organization exclusively for conservation purposes."  26 C.F.R. sec. 1.170A-14(g)(2) (2012) provides that "no deduction will be permitted under this section [i.e., 26 C.F.R. sec. 1.170A-14 (2012)] for an interest in property which is subject to a mortgage unless the mortgagee subordinates its rights in the property to the right of the qualified organization to enforce the conservation purposes of the gift in perpetuity." Because U.S. Bank had a mortgage on Minnick's land that was not subordinated to the conservation easement when the easement was granted, the IRS contends Minnick and Lienhart cannot deduct the value of the conservation easement

**[*7]** granted to the Land Trust. This contention about the mortgage was not raised by the IRS in the notice of deficiency; it was raised in the amended answer, and therefore the IRS has the burden of proof regarding all factual issues underlying the contention. See Tax Ct. R. Pract. & Proc. 142(a)(1).

Minnick and Lienhart argue that the September 2011 subordination agreement with U.S. Bank satisfies the subordination requirement in the regulation. The argument is unavailing. In Mitchell v. Commissioner, 138 T.C. 324, 332 (2012), we held that a subordination agreement must be in place at the time that the conservation easement is granted.

Minnick and Lienhart argue that Mitchell is distinguishable because the warranty provision in the easement demonstrates that Minnick intended that the mortgage be subordinated at the time he granted the conservation easement. They also contend that U.S. Bank would have been willing to freely subordinate its mortgage at the time the conservation easement was granted. We are not persuaded by these attempts to distinguish Mitchell. Intention and willingness are not what matters. The regulation required a subordination agreement. Without a subordination agreement, U.S. Bank would have been able to seize the land in the event of default on the mortgage, thus owning the land free of the conservation easement. See id. at 332. For the sake of completeness, we add that we do not

[*8] agree with Minnick and Leinhart that the warranty provision demonstrates that Minnick intended that the mortgage be subordinated when he granted the conservation easement. The warranty provision means only that Minnick falsely-- although we think unintentionally--represented to the Land Trust that the U.S. Bank mortgage had been subordinated to the conservation easement at the time he granted the easement. We also cannot agree with Minnick and Lienhart that U.S. Bank would have been willing to agree to freely subordinate its mortgage in 2006. There are two reasons we do not make such a finding. First, Minnick and Lienhart failed to propose this as a finding of fact in their opening brief, as required by our rules of procedure. Tax Ct. R. Pract. & Proc. 151(e)(3). Second, the idea that U.S. Bank would have subordinated its mortgage in 2006 is contradicted by the record. A loan manager at U.S. Bank testified that shortly before trial Minnick asked him to sign a letter stating that U.S. Bank would have been willing to agree to subordinate its mortgage to the conservation easement in 2006 had it known about the conservation easement. The loan manager refused to sign such a statement and he did not make the statement under oath when he testified. Furthermore, the bank required Minnick to pay down a portion of the loan as consideration for the bank signing the subordination agreement in 2011. Thus, the bank did not freely

**[*9]** subordinate its mortgage in 2011.  This suggests that it would not have freely subordinated its mortgage in 2006.

Minnick and Lienhart argue that <u>Mitchell</u> is inapposite because it did not consider the effect of the Uniform Conservation Easement Act ("Act"), Idaho Code Ann. secs. 55-2101 to 55-2109 (2012).  They contend that the Act imposes the doctrine of cy pres on all conservation easements in Idaho and that the cy pres doctrine has the effect of subordinating the U.S. Bank mortgage to the conservation easement.[1]  The Act does not support this theory.  The Act allows

---

[1]The operation of the cy pres doctrine has been summarized as follows:

> If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

Restatement, Trusts 2d, sec. 399 (1959).  The operation of the cy pres doctrine can be illustrated by the following example.  A person bequeathed property in trust to establish a hospital in a particular town.  Before the hospital could be built, a similar hospital was established in the same town.  No useful purpose would be accomplished by having two hospitals.  Cy pres would require a court to direct the trust funds to some other way of assisting the town's sick--if the person who made the bequest had a general intent to provide for the town's sick.  <u>Id.</u> cmt. k.

Thus, the cy pres doctrine allows the property owned by a trust to be directed to a use different from that directed by the instrument that established the trust.  The

(continued...)

**[*10]** actions regarding conservation easements to be brought in court. Idaho Code Ann. sec. 55-2103 ("An action affecting a conservation easement may be brought".) But once an action was brought, U.S. Bank's mortgage would have been protected, for Idaho Code Ann. sec. 55-2102(4)--part of the Act--provides: "An interest in real property in existence at the time a conservation easement is created is not impaired by it unless the owner of the interest is a party to the conservation easement or consents to it." U.S. Bank's mortgage on Minnick's land is an "interest in real property" that was "in existence at the time" Minnick created the conservation easement. See, e.g., Suchan v. Suchan, 741 P.2d 1289, 1298 (Idaho 1986) (a mortgage interest can exist in real property capable of being transferred). U.S. Bank was not a party to the conservation easement when it was created, and it did not consent to the easement. Therefore, under Idaho Code Ann. sec. 55-2102(4), the mortgage was not impaired by the 2006 conservation easement.

Minnick and Lienhart also contend that there was only a remote possibility that Minnick would default on the U.S. Bank loan. But we held in Mitchell v.

---

[1](...continued)
doctrine does not expand the property interests owned by the trust. Thus, it is difficult to see how the cy pres doctrine, if it somehow governed the easement on Minnick's land, would defeat U.S. Bank's mortgage on the same land.

**[\*11]** <u>Commissioner</u>, 138 T.C. at 333, 337, that the likelihood of default is irrelevant. Further, the factual allegation that there was only a remote possibility that Minnick would default on the U.S. Bank loan was not set forth in Minnick and Lienhart's proposed findings of fact. We do not make a finding that the allegation is correct. <u>See</u> Tax Ct. R. Pract. & Proc. 151(e)(3).

The value of the conservation easement is not deductible as a charitable contribution because Minnick and Lienhart failed to meet the subordination requirement set forth in the regulation. We therefore need not reach the IRS's alternative arguments for denying the deduction, i.e. that the easement did not serve conservation purposes, that the conservation easement was not protected in perpetuity because it could be amended by agreement of Minnick and the Land Trust, that the Land Trust would not receive a proportionate share of the proceeds if the easement was extinguished, and that any charitable deduction is limited to the amount of basis of the land allocated to the easement.

2.  <u>Minnick and Lienhart are liable for penalties</u>.

Section 6662 imposes an accuracy-related penalty if any part of an underpayment of tax required to be shown on a return is due to, among other things, negligence or disregard of rules or regulations (hereinafter referred to, without distinction, as "negligence"), a substantial understatement of income tax,

**[*12]** or a substantial valuation misstatement.  Sec. 6662(a) and (b)(1), (2), and (3).

The penalty is 20% of the portion of the underpayment of tax to which the section

applies.  Sec. 6662(a).  In the case of a gross valuation misstatement, section

6662(h) increases the penalty to 40%.

Section 6664(c) provides a reasonable-cause exception to the accuracy-

related penalty.  Generally, under section 6664(c)(1), no penalty is imposed under

section 6662 with respect to any portion of an underpayment if it is shown that there

was reasonable cause for such portion and that the taxpayer acted in good faith with

respect to such portion.  In determining whether such a showing has been made,

"the most important factor is the extent of the taxpayer's effort to assess the

taxpayer's proper tax liability."  26 C.F.R. sec. 1.6664-4(b)(1) (2012).  Reliance on

a professional tax-return preparer or an appraiser can constitute reasonable cause

and good faith "if, under all the circumstances, such reliance was reasonable and the

taxpayer acted in good faith."  Id.

Under section 7491(c), the IRS bears the burden of production with regard to

penalties and must come forward with sufficient evidence indicating that it is proper

to impose penalties.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

However, once the IRS has met the burden of production, the burden of proof

remains with the taxpayer, including the burden of proving that the penalties are

**[\*13]** inappropriate because of reasonable cause. Id. at 446-447. Minnick and

Lienhart argue that the IRS has the burden of proof with respect to the subordination

requirement to the extent it relates to penalties. The IRS does not take a position

on which party has the burden of proof. We base our findings regarding penalties

on the preponderance of the evidence. Therefore, we need not determine which

party has the burden of proof.

The IRS had initially determined that, on account of its disallowance of

Minnick and Lienhart's carryover charitable-contribution deductions for the grant

of the conservation easement to the Land Trust, they underpaid the tax required to

be shown on their 2007 and 2008 returns and were (1) liable for the accuracy-

related penalty on one or more of three grounds (negligence, substantial

understatement of income tax, or substantial valuation misstatement), and (2)

liable for the section-6662(h) increase in the penalty from 20% to 40% for a gross

valuation misstatement. This determination was reflected in the notice of

deficiency. The IRS now concedes that "if petitioners' claimed deduction fails to

satisfy the legal requirements of I.R.C. § 170 or the Regulations thereunder, or both,

respondent concedes that neither of these [substantial valuation misstatement or

gross valuation misstatement] penalties would apply." As we hold here, the

[*14] deductions fail to satisfy the subordination requirement; this means that the IRS does not assert that the substantial valuation misstatement and gross valuation misstatement components of the accuracy-related penalty apply.

Negligence, for section-6662 purposes, is the lack of due care or the failure to do what a reasonably prudent person would do under like circumstances. Hofstetter v. Commissioner, 98 T.C. 695, 704 (1992). Negligence includes failing "to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return." 26 C.F.R. sec. 1.6662-3(b)(1) (2012); see also sec. 6662(c).

The IRS contends that Minnick and Lienhart were negligent because they should have known that a deduction would not be allowed for an easement to which U.S. Bank's mortgage was not subordinated. Minnick and Lienhart respond that Minnick followed a model conservation-easement form given to him by the Land Trust, that Minnick discussed with his C.P.A. the legal requirements for a conservation easement, and that he hired an expert appraiser to appraise the conservation easement. Minnick also contends that he should not be held to the standard of an experienced tax attorney because he worked only for a few months as an attorney and that he spent only a fraction of his time practicing tax law.

[*15] It is true that Minnick's experience as a lawyer did not include substantial tax work. He worked as a lawyer for only nine months, during which only a portion of his work involved tax law. After that he operated a business selling building supplies.[2] It is against this background that his efforts should be evaluated. His wife Lienhart was uninvolved in determining whether the conservation easement gave rise to a charitable-contribution deduction.

In determining whether the grant of the conservation easement gave rise to a charitable-contribution deduction, Minnick did not exercise reasonable care. He did not seek to subordinate U.S. Bank's mortgage to the conservation easement until 2011. His failure to comply with the subordination requirement found in the regulation appears to stem from his failure to solicit advice from his C.P.A. about the deductibility of the conservation easement, and the failure of the C.P.A. to give such advice. The C.P.A. explained to Minnick that the value of a conservation easement is deductible under the Code. However, he did not tell Minnick that the particular conservation easement Minnick granted to the Land Trust was

---

[2]Minnick was also a politician--he served a term in the U.S. House of Representatives from January 2009 to January 2011--but the details of his political career are not in the record.

**[\*16]** deductible.[3]  In the absence of such advice, Minnick could not have reasonably relied on the C.P.A. when he claimed a deduction for the conservation-easement contribution.  Minnick should have been alerted by the warranty provision in the conservation easement that there might be a problem with the lack of subordination.  The easement contained a warranty from Minnick that there was no unsubordinated mortgage on the land.  It is true that the form Minnick used to grant the easement was a "model", but that does not matter.  This model easement form was not suited to Minnick's particular parcel of land.

Although Minnick hired an appraiser to determine the value of the property, this does not contstitute reasonable cause to avoid imposition of the accuracy-related penalty.  The appraiser's job was to determine the value of the conservation easement, not to determine whether other requirements for deducting the

---

[3]Note the C.P.A.'s careful response to the following question from Minnick and Lienhart's counsel:

> Q    Did you advise Mr. Minnick as to whether the conservation easement was deductible or not?

> A    I advised him that a conservation easement, the donation of a conservation easement is deductible as a charitable contribution, and is specifically provided for in the code.

We infer that the C.P.A. declined to tell Minnick the grant of the particular easement was deductible and that Minnick should have recognized this.

**[\*17]** contribution of the easement--for example, the subordination requirement--had been met.

We determine that the underpayments of tax for 2007 and 2008 resulting from the disallowance of the charitable deduction carryovers were due to negligence. We need not determine whether the underpayments were also due to substantial understatements of income tax.

In contending that they have a good-faith-and-reasonable-cause defense, Minnick and Lienhart reiterate the steps that Minnick took to determine that he was entitled to a deduction, i.e., using the model form for granting an easement, hiring an appraiser, and consulting a C.P.A. They also contend that Minnick's failure to secure a subordination agreement was inadvertent. This was one of the reasons the taxpayer in <u>Mitchell</u> was held to have a good-faith-and-reasonable-cause defense. <u>Mitchell v. Commissioner</u>, 138 T.C. at 339-340. But, unlike the taxpayer in <u>Mitchell</u>, Minnick was put on notice by the warranty provision in the conservation easement that the unsubordinated mortgage posed a problem for the deductibility of the conservation-easement contribution. Furthermore, Minnick failed to get an opinion from his C.P.A. that he was entitled to a deduction. There is no indication that there was such a failure in <u>Mitchell</u>. <u>Id.</u> We have already explained why we think Minnick and Lienhart did not exercise reasonable care to

**[*18]** evaluate the deductibility of the easement.  The same reasons support our view that Minnick and Lienhart did not have reasonable cause for claiming a charitable-contribution deduction.

We hold that Minnick and Lienhart are liable for the accuracy-related penalties.  The penalty amounts for which they are liable are equal to 20% of the underpayments attributable to the carryover charitable-contribution deductions, or half the penalty amounts that were calculated in the notice of deficiency using a 40% rate.  Therefore, the amounts for which Minnick and Lienhart are liable are $8,461.05 for 2007 and $28,175.40 for 2008.

3.    Evidentiary matters

The parties executed a stipulation of facts stating that all exhibits attached to the stipulation "may be accepted as authentic" and "are incorporated in this stipulation and made a part hereof; provided, however, that either party has the right to object to the admission of any such * * * exhibits in evidence on the grounds of materiality and relevancy".  The parties agree that the stipulation did not waive hearsay objections to the attached exhibits.  Among the documents attached to the stipulation were Exhibits 9-J, 10-J, 11-J, 14-J through 34-J, and 41-

[*19] R, 42-R, 43-R, and 45-R.[4]  At the beginning of the trial Minnick and Lienhart objected to these documents on the ground that they were relevant to IRS theories that had not been asserted in the notice of deficiency.  The Court took the objections under advisement.  The Court later allowed the IRS to amend its answer to assert these theories.  As we describe, Minnick and Lienhart also objected to Exhibits 41-R, 42-R, 43-R, and 45-R on grounds other than relevancy.  Exhibits 41-R, 42-R, 43-R, and 45-R are appraisals of the land by Sam Langston for U.S. Bank, dated February 7, 2006, June 3, 2008, April 8, 2009, and August 1, 2011, respectively.  Minnick and Lienhart objected to these exhibits on hearsay grounds.  They also objected that the exhibits are in substance expert reports and that they were not exchanged under Tax Court Rule of Practice and Procedure 143.  They also objected that the documents were not exchanged 14 days before trial as required by the Court's pretrial order.  The Court took these objections to Exhibits 41-R, 42-R, 43-R, and 45-R under advisement.  Minnick and Lienhart clarified that they did not object to these four exhibits to the extent they support findings of fact other than the value of the conservation easement, such as U.S. Bank's state of mind.  During trial, the IRS introduced Exhibit 49-R, an indemnification

---

[4]Minnick and Lienhart objected to Exhibit "44-R" during trial.  There is not a 44-R.  There is a 43-R and a 44-J.  They really meant to object to Exhibit 43-R.

**[\*20]** agreement between Minnick and U.S. Bank. Minnick and Lienhart objected on the ground that it is relevant to IRS theories other than those raised in the notice of deficiency. The Court also took this objection under advisement.

Minnick and Lienhart's relevancy objections lost their force when the Court permitted the IRS to amend its answer to assert its new theories. However, we agree with Minnick and Lienhart that Langston's opinion on the value of the conservation easement, which is reflected in Exhibits 41-R, 42-R, 43-R, and 45-R, should not serve as the basis for our decision. For it to do so would contravene Tax Court Rule of Practice and Procedure 143, which requires that expert opinions be brought before the Court in the form of an expert report and that the expert report be exchanged with the other party before trial. We therefore admit Exhibits 41-R, 42-R, 43-R, and 45-R, but we do not rely on these appraisals to the extent they opine on the value of the conservation easement. We admit Exhibits 9-J, 10-J, 11-J, 14-J through 34-J, and Exhibit 49-R without any conditions.

4.   Conclusion

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

[*21]  To reflect the foregoing,

Decision will be entered

for respondent.