T.C. Memo. 2013-204

UNITED STATES TAX COURT

RAMONA L. MITCHELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 10891-10.                    Filed August 29, 2013.

<u>Larry D. Harvey</u>, for petitioner.

<u>Miles B. Fuller</u>, for respondent.

---

[*]This opinion supplements our prior Opinion, <u>Mitchell v. Commissioner</u>, 138 T.C. 324 (2012).

**[\*2]**          SUPPLEMENTAL MEMORANDUM OPINION


     HAINES, Judge:  This case is before the Court on petitioner's motions to

vacate decision pursuant to Rule 162[1] and to reconsider our Opinion in Mitchell v.

Commissioner, 138 T.C. 324 (2012) (Mitchell I), pursuant to Rule 161.  We will

grant petitioner's motion to vacate the decision in order to consider and rule on

petitioner's motion to reconsider our Opinion.  For the reasons that follow, we will

deny petitioner's motion to reconsider (petitioner's motion).

     In petitioner's motion petitioner alleges that this Court erred in relying on

Kaufman v. Commissioner, 136 T.C. 294 (2011) (Kaufman II), which was

affirmed in part, vacated in part, and remanded in part by the Court of Appeals for

the First Circuit in Kaufman v. Shulman, 687 F.3d 21 (1st Cir. 2012) (Kaufman

III).[2]  Petitioner makes various other claims which we will address below.

---

     [1]Unless otherwise indicated, all section references are to the Internal
Revenue Code, as amended and in effect at all relevant times, and all Rule
references are to the Tax Court Rules of Practice and Procedure.  Amounts are
rounded to the nearest dollar.

     [2]The IRS originally filed a motion for summary judgment with this Court on
January 15, 2010.  In ruling on the motion for summary judgment in Kaufman v.
Commissioner, 134 T.C. 182 (2010) (Kaufman I), we disallowed any deductions
for the easement contribution but found genuine issues of material fact remaining
with regard to the cash contribution deduction and the IRS' imposition of
penalties.  In a second Opinion after a trial on the reserved issues, this Court on

                                                            (continued...)

**[*3]**                                   Background

In <u>Mitchell I</u> we made findings of fact, which we incorporate herein by reference. For convenience and clarity, we repeat below the facts relevant to our disposition of petitioner's motion, and we supplement those facts as appropriate to provide a complete background statement.

In 1998 Charles and Ramona Mitchell bought a 105-acre parcel of land from Clyde Sheek in Mancos, Colorado, for $180,000.[3] The parcel was unimproved; i.e., it had no buildings, only partial fencing, no utilities, and no domestic water. Access was from a two-lane gravel road maintained by the county. The Mitchells installed a two-inch water line from the northern boundary of the 105-acre parcel in 2000 with electrical lines added in 2001-02. The Mitchells' son, Blake, and his wife, Melody, built a home on the 105-acre parcel

---

[2](...continued)
April 4, 2011, in <u>Kaufman v. Commissioner</u>, 136 T.C. 294 (2011) (<u>Kaufman II</u>), <u>aff'd in part, vacated in part and remanded in part</u>, 687 F.3d 21 (1st Cir. 2012), reaffirmed its ruling on the easement but held that the taxpayers were entitled to deduct their $16,840 cash contribution on their 2004 return (as opposed to their 2003 return) and were liable for only a small penalty for negligence in claiming the deduction for the earlier year.

[3]Montezuma County assessor's records describe the parcel as 95 acres. The land records describe it as 105 acres. We will use 105 acres for purposes of this opinion.

[*4] in 2000.  Subsequently a 50- by 100-foot shop and a 900-square-foot guesthouse were built on the parcel.

In 2001 Charles purchased an additional 351 acres bordering the south boundary of the 105-acre parcel from Sheek for $683,000.  Sheek did not want all cash.  He wanted retirement income.  Consequently, after a downpayment of $83,000, the balance of $600,000 was to be paid in installments of $60,000 per year plus interest.  A promissory note was signed and secured by a deed of trust recorded in the records of Montezuma County, Colorado, in January 2001.

As a result of the two purchases, the Mitchells owned 456 acres of ranchland in the southern portion of the Mancos Valley (Lone Canyon Ranch). Charles and petitioner built their own home at Lone Canyon Ranch in 2001 and 2002.

Charles began having health problems.  In December 2002 the Mitchells formed C. L. Mitchell Properties, L.L.L.P., a family limited partnership (partnership).[4]  Lone Canyon Ranch was transferred to the partnership, subject to the deed of trust, as were other investments, including a rental property and cash and securities.  Although Charles was named the general partner, it soon became

---

[4]The name of the limited partnership was later changed to Lone Canyon Ranch Limited Liability Limited Partnership.

[*5] evident that he could not carry out his management duties. Consequently, Blake took over the management duties. Charles eventually died of his illness in 2006.

On December 31, 2003, the partnership granted a conservation easement on the south 180 acres of unimproved land to Montezuma Land Conservancy (Conservancy). The parties executed a deed of conservation easement in gross. At the time the easement was granted, the deed of trust securing the debt to Sheek was not subordinated to the conservation easement held by Conservancy. From 2003 to 2005 the partnership had the money to pay off the promissory note, which the deed of trust secured, at any time. There were no lawsuits, potential or otherwise; all bills were paid; payments on the promissory note to Sheek were current, and casualty insurance was in place. Two years after the conservation easement was granted, Sheek agreed to subordinate his deed of trust to the conservation easement but received no consideration for the subordination. On December 22, 2005, Sheek signed the Subordination to Deed of Conservation Easement in Gross (subordination agreement).

In 2004 the Mitchells hired William B. Love Appraisals, Inc. (Love), to appraise the conservation easement granted to Conservancy as of December 31, 2003. Love determined that the conservation easement had a market value of

[*6] $504,000. Love issued an appraisal report for the partnership on February 17, 2004 (Love appraisal). The partnership claimed a $504,000 charitable contribution deduction, which flowed through to its two partners, Charles and petitioner, equally. Charles and petitioner claimed a $504,000[5] charitable contribution deduction on their 2003 joint Federal income tax return dated April 13, 2004 (2003 return). Charles and Petitioner attached Form 8283, Noncash Charitable Contributions, to their 2003 return along with a copy of the Love appraisal.

On February 23, 2010, respondent mailed a notice of deficiency to petitioner disallowing her 2003 charitable contribution deduction. Respondent determined that petitioner had not met the requirements of section 170. Alternatively, respondent determined that if petitioner had met the requirements of section 170, the amount of the charitable contribution deduction was $100,100.[6] Petitioner timely filed a petition with this Court on May 12, 2010.

---

[5]Because of limitations on itemized deductions claimed on Schedule A, Itemized Deductions, only $447,236 of the charitable contribution deduction could be claimed on the 2003 return.

[6]Respondent in his pretrial memorandum conceded that if a charitable contribution deduction was allowed, the amount of the deduction would be $122,000.

**[\*7]**  In <u>Mitchell I</u>, respondent argued that petitioner's conservation easement was not protected in perpetuity and thus was not a qualified conservation contribution. Specifically, respondent argued that petitioner failed to satisfy the requirements of section 1.170A-14(g)(2), Income Tax Regs. (subordination regulation), and section 1.170A-14(g)(6)(ii), Income Tax Regs. (proceeds regulation).  We held that the requirements of the subordination regulation are strict requirements that may not be avoided and that petitioner had failed to satisfy the requirements of the subordination regulation.  As a result, we held petitioner had failed to meet the requirements of section 170 and denied her charitable contribution deduction.

Discussion

I.    <u>Motions To Reconsider and To Vacate</u>

Motions to reconsider and to vacate are governed by Rules 161 and 162, respectively.  Those Rules establish filing deadlines but provide no guidance on when the Court should grant or deny such motions.  In the absence of more specific guidance, we look to caselaw and the Federal Rules of Civil Procedure. <u>See</u> Rule 1(b).

The decision to grant a motion to reconsider or to vacate lies within the discretion of the Court.  <u>Estate of Quick v. Commissioner</u>, 110 T.C. 440, 441 (1998) (motion to reconsider); <u>Kun v. Commissioner</u>, T.C. Memo. 2004-273

**[\*8]** (motion to vacate), aff'd, 157 Fed. Appx. 971 (9th Cir. 2005). Motions to reconsider are generally "intended to correct substantial errors of fact or law and allow the introduction of newly discovered evidence that the moving party could not have introduced by the exercise of due diligence in the prior proceeding." Knudsen v. Commissioner, 131 T.C. 185, 185 (2008). "Reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or tendering new legal theories to reach the end result desired by the moving party." Estate of Quick v. Commissioner, 110 T.C. at 441-442. Motions to vacate are generally not granted absent a showing of unusual circumstances or substantial error, e.g., mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or other reason justifying relief. See, e.g., Fed. R. Civ. P. 60(b); Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999 (1978).

Importantly, an intervening change in the law can warrant the granting of both a motion to reconsider and a motion to vacate. See Alioto v. Commissioner, T.C. Memo. 2008-185. In Alioto v. Commissioner, T.C. Memo. 2006-199, the Court had held that it lacked jurisdiction over "stand-alone" section 6015(f) cases. After Congress expanded the Court's jurisdiction to include such cases, see Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. C, sec. 408, 120 Stat. at 3061, the taxpayer filed timely motions to reconsider and to vacate, which

**[\*9]** the Court granted, see Alioto v. Commissioner, T.C. Memo. 2008-185 ("We agree that the Court correctly applied the caselaw as it existed at the time the Court issued Alioto I [Alioto v. Commissioner, T.C. Memo. 2006-1999]; however, we disagree that the motion for reconsideration should be denied.  After the Court's decision in Alioto I the law and the Court's jurisdiction changed." (Fn. ref. omitted.)).

Petitioner asks us to grant petitioner's motion in the light of the partial vacating of Kaufman II by the Court of Appeals for the First Circuit.  See Kaufman III, 687 F.3d 21.

In petitioner's motion petitioner argues that this Court should follow the approach taken by the Court of Appeals for the First Circuit and reconsider its Opinion.  Specifically, petitioner argues that the conservation easement deed protected the proceeds to be paid to Conservancy in perpetuity upon termination of the conservation easement and thus under the approach taken in Kaufman III the conservation easement deed satisfied the requirements of section 1.170A-14(g), Income Tax Regs.

[*10] II.     Legal Background

A.     Qualified Conservation Contribution

A taxpayer is generally allowed a deduction for any charitable contribution made during the taxable year. Sec. 170(a)(1). A charitable contribution is a gift of property to a charitable organization made with charitable intent and without the receipt or expectation of receipt of adequate consideration. See Hernandez v. Commissioner, 490 U.S. 680, 690 (1989); United States v. Am. Bar Endowment, 477 U.S. 105, 116-118 (1986); see also sec. 1.170A-1(h)(1) and (2), Income Tax Regs. While a taxpayer is generally not allowed a charitable contribution deduction for a gift of property consisting of less than an entire interest in that property, an exception is made for a "qualified conservation contribution." See sec. 170(f)(3)(A), (B)(iii).

A "qualified conservation contribution" is a contribution (1) of a "qualified real property interest" (2) to a "qualified organization" (3) which is made "exclusively for conservation purposes." Sec. 170(h)(1); see also sec. 1.170A-14(a), Income Tax Regs. Respondent concedes that there was a contribution of a qualified real property interest and that at the time of the contribution Conservancy was a qualified organization under section 170(h)(3). Therefore, we

[*11] focus on the third requirement; i.e., whether petitioner's contribution of the conservation easement to Conservancy was exclusively for conservation purposes.

A contribution is made exclusively for conservation purposes only if it meets the requirements of section 170(h)(5). Glass v. Commissioner, 124 T.C. 258, 277 (2005), aff'd, 471 F.3d 698 (6th Cir. 2006). Section 170(h)(5)(A) provides that "[a] contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity." Section 1.170A-14(g), Income Tax Regs., elaborates on the enforceability-in-perpetuity requirement. Paragraph (g)(1) provides generally that in order for a conservation easement to be enforceable in perpetuity, the "interest in the property retained by the donor * * * must be subject to legally enforceable restrictions * * * that will prevent uses of the retained interest inconsistent with the conservation purposes of the donation." The various subparagraphs of paragraph (g) set forth many of these legally enforceable restrictions. Mitchell I, 138 T.C. at 330.

Paragraph (g)(2) addresses mortgages and in pertinent part provides that "no deduction will be permitted * * * for an interest in property which is subject to a mortgage unless the mortgagee subordinates its rights in the property to the right of the * * * [donee] organization to enforce the conservation purposes of the gift in perpetuity."

[*12] Paragraph (g)(3) is entitled "Remote future event" and addresses events that may defeat the property interest that has passed to the donee organization. It provides that a deduction will not be disallowed merely because on the date of the gift there is the possibility that the interest will be defeated so long as on that date the possibility of defeat is so remote as to be negligible.

Paragraph (g)(6) is entitled "Extinguishment" and recognizes that after the donee organization's receipt of an interest in property, an unexpected change in the conditions surrounding the property can make impossible or impractical the continued use of the property for conservation purposes. Subdivision (i) of paragraph (g)(6) provides that those purposes will nonetheless be treated as protected in perpetuity if the restrictions limiting use of the property for conservation purposes "are extinguished by judicial proceeding and all of the donee's proceeds * * * from a subsequent sale or exchange of the property are used by the donee organization in a manner consistent with the conservation purposes of the original contribution."

Subdivision (ii) of paragraph (g)(6) is entitled "Proceeds" and, in pertinent part, provides:

> [F]or a deduction to be allowed under this section, at the time of the gift the donor must agree that the donation of the perpetual conservation restriction gives rise to a property right, immediately

**[*13]** vested in the donee organization, with a fair market value that is at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift bears to the value of the property as a whole at that time. * * * For purposes of this paragraph (g)(6)(ii), that proportionate value of the donee's property rights shall remain constant. Accordingly, when a change in conditions gives rise to the extinguishment of a perpetual conservation restriction under paragraph (g)(6)(i) of this section, the donee organization, on a subsequent sale, exchange, or involuntary conversion of the subject property, must be entitled to a portion of the proceeds at least equal to that proportionate value of the perpetual conservation restriction * * *.

B.     Mitchell I

In Mitchell I, petitioner first argued that she met the requirements of the subordination regulation because Sheek subordinated his deed of trust to the deed of conservation easement in 2005, two years after the grant of the conservation easement. Petitioner argued that the subordination regulation had no requirement as to when the mortgagee must subordinate its claim to that of the donee organization. We held that though the subordination regulation is silent as to when a taxpayer must subordinate a preexisting mortgage on donated property, in order for a conservation easement to be protected in perpetuity at the time of the gift (i.e., the time the deduction is taken) the taxpayer must have satisfied the requirements of section 170(h) and specifically the subordination regulations.

[*14] Thus we held that the regulation requires that a subordination agreement be in place at the time of the gift.

Next petitioner argued that we must read the subordination regulation in tandem with the so-remote-as-to-be-negligible standard in section 1.170A-14(g)(3), Income Tax Regs. She argued that the probability of her defaulting on the Sheek promissory note on December 31, 2003, was so remote as to be negligible. Thus, petitioner argued, that possibility should be disregarded under the so-remote-as-to-be-negligible standard in determining whether the conservation easement is enforceable in perpetuity. Relying on our prior discussions of the so-remote-as-to-be-negligible standard in Kaufman II and Carpenter v. Commissioner, T.C. Memo. 2012-1 (Carpenter I), we found that the so-remote-as-to-be-negligible standard could not be used to avoid a specific requirement of the regulations (i.e., the subordination regulation), the judicial proceeding requirement of section 1.170A-14(g)(6)(i), Income Tax Regs., and the proceeds regulation.

Finally, petitioner argued that she entered into an oral agreement with Sheek with respect to the use of Lone Canyon Ranch and that the oral agreement provided the necessary protection required by section 170(h)(1)(C). We disagreed and held that the oral agreement had no effect on Sheek's ability to foreclose on

[*15] the property and extinguish the conservation easement agreement had petitioner defaulted on her promissory note.  Thus, the oral agreement failed to comply with the requirements of the subordination regulation.

Petitioner also argued that she had satisfied the requirements of the proceeds regulation.  However, having found that petitioner failed to meet the requirements of the subordination regulation, we did not need to make a determination on this issue to make our decision.

C.    Kaufman III

In 1999 Lorna and Gordon Kaufman, the taxpayers, bought a single-family rowhouse in the South End of Boston subject to local restrictions.  In 2003 the taxpayers contributed to a donee organization a facade easement on their single-family rowhouse.  At the time of contribution, the property was subject to a mortgage.  The mortgagee agreed to subordinate the mortgage to the conservation easement deed in favor of the donee organization; however, the mortgagee retained a "prior claim" to all proceeds of condemnation and to all insurance proceeds resulting from any casualty of the property.  The taxpayers claimed a charitable contribution deduction equal to the value they assigned to the facade easement.  The Commissioner disallowed the deduction because the taxpayers had failed to meet the requirement of the proceeds regulation that the charity receive a

[*16] proportionate share of proceeds following judicial extinguishment of the facade easement and a subsequent sale of the property.

In Kaufman II the taxpayers argued that though the mortgagee may have had a prior claim to condemnation proceeds over the donee, that did not absolve Lorna Kaufman of her obligation to make good on the donee's entitlement to a pro rata share of the proceeds realized from the sale or involuntary conversion of the property. As a result, the taxpayers claimed the various agreements satisfied the requirements of the proceeds regulation. This Court found the donee's contractual right against the taxpayer to a share of the proceeds to be insufficient to satisfy the requirements of section 1.170A-14(g)(6), Income Tax Regs., stating: "[W]e think it the intent of the drafters of section 1.170A-14(g)(6), Income Tax Regs., that the donee have a right to a share of the proceeds and not merely a contractual claim against the owner of the previously servient estate." Kaufman II, 136 T.C. at 309.

The taxpayers also argued that section 1.170A-14(g)(6), Income Tax Regs., should be read in tandem with section 1.170A-14(g)(3), Income Tax Regs. The taxpayers hypothesized a very low probability of occurrence of a set of events that would deprive the charity of its proportional share of proceeds following judicial extinguishment of the facade easement and subsequent sale of the property. They concluded that the possibility of such deprivation was "so remote as to be

[*17] negligible" and, thus, had to be disregarded under the so-remote-as-to-be-

negligible standard in determining whether the facade easement was enforceable

in perpetuity.

This Court in Kaufman II found that the so-remote-as-to-be-negligible

standard does not modify the proceeds regulation. Specifically, we held that

> [i]t is not a question as to the degree of improbability of the changed
> conditions that would justify judicial extinguishment of the
> restrictions. Nor is it a question of the probability that, in the case of
> judicial extinguishment following an unexpected change in
> conditions, the proceeds of a condemnation or other sale would be
> adequate to pay both the bank and * * * [the charity]. As we said in
> Kaufman v. Commissioner, 134 T.C. at 186, the requirement in
> section 1.170A-14(g)(6)(ii), Income Tax Regs., that * * * [the
> charity] be entitled to its proportionate share of the proceeds is not
> conditional: "Petitioners cannot avoid the strict requirement in
> section 1.170A-14(g)(6)(ii), Income Tax Regs., simply by showing
> that they would most likely be able to satisfy both their mortgage and
> their obligation to * * * [the charity]."

Kaufman II, 136 T.C. at 313. The Court of Appeals for the First Circuit agreed.

Kaufman III, 687 F.3d at 27.

On appeal, the Court of Appeals for the First Circuit in Kaufman III held for

the taxpayers, finding the Commissioner's reading of section 1.170A-14(g)(6),

Income Tax Regs., unreasonable. The Court of Appeals noted the superpriority of

tax liens to most prior claims and determined that the Commissioner's reading of

[*18] section 1.170A-14(g)(6), Income Tax Regs., would defeat the purpose of the statute.  Specifically, the Court of Appeals stated:

> The IRS reads the word "entitled" in the extinguishment regulation to mean "gets the first bite" as against the rest of the world, a view the Tax Court accepted in reading "entitled" to mean "ha[s] an absolute right."  Kaufman II, 136 T.C. at 313.  But a grant that is absolute against the owner-donor is also an entitlement, Black's Law Dictionary (7th ed. 1999) ("entitle" defined as "[t]o grant a legal right to"); Collins English Dictionary (10th ed. 2009) ("to give (a person) the right to do or have something"), and almost the same as an absolute one where third-party claims (here, the bank's or the city's) are contingent and unlikely.

Kaufman III, 687 F.3d at 27.

The Commissioner also argued that the taxpayers failed to meet the requirements of section 1.170A-14(g)(1), Income Tax Regs.  A provision in the agreement between the taxpayers and the donee stated that nothing in the conservation easement deed of trust shall be construed to limit the donee's right to give its consent to changes in the conservation easement deed or to abandon some or all of its rights thereunder.  The Commissioner argued that this provision was a blank check to the donee to consent to any type of change, irrespective of its compatibility with the donation's conservation purpose; thus, the easement failed to include the necessary restrictions that would prevent uses inconsistent with the conservation purpose as required by section 1.170A-14(g)(1), Income Tax Regs.

**[\*19]**  The Court of Appeals rejected the Commissioner's argument, citing a similar argument made in Commissioner v. Simmons, 646 F.3d 6, 10 (D.C. Cir. 2011), aff'g T.C. Memo. 2009-208.  The Court of Appeals held that "[t]he language of paragraph (g)(1) nowhere suggests the stringent outcome that the IRS seeks to ascribe to it and the consequences of the reading would be to deprive the donee organization of flexibility to deal with remote contingencies."  Kaufman III, 687 F.3d at 28.

III.   Whether Kaufman III Requires This Court To Reconsider Its Opinion in Mitchell I

Petitioner argues that the Court of Appeals for the First Circuit's opinion in Kaufman III is an intervening change in law and requires this Court to reconsider its Opinion in Mitchell I.  Specifically, petitioner argues that in the light of the Court of Appeals for the First Circuit's emphasis on the destination of proceeds upon extinguishment of a conservation easement in Kaufman III, this Court should take an overall approach in analyzing the in-perpetuity requirement of section 170(h)(5)(A) and section 1.170A-14(g), Income Tax Regs., and focus on any proceeds resulting from an extinguishment of the conservation easements. Petitioner argues that if there were an extinguishment in this case, Conservancy would receive its proportionate share of any proceeds from the extinguishment

**[\*20]** because the partnership had an obligation and sufficient funds to pay Conservancy its proportionate share of proceeds from an extinguishment of the conservation easement, that Conservancy is bound by law to discharge its exempt purpose upon receipt of such proceeds, and thus any such proceeds are protected in perpetuity, which is the goal of the law. Petitioner also argues that since the partnership had sufficient funds to discharge the debt related to the Sheek mortgage at any time before the subordination, this was a functional equivalent of a subordination. Respondent argues that Kaufman III does not apply to this case. Specifically, respondent argues that Kaufman III does not represent an intervening change in law for purposes of this case, that petitioner has misread Kaufman III, that Kaufman III did not address the subordination regulation upon which this Court based its Opinion in Mitchell I, and that Kaufman III is not binding in the present case.[7] We agree with respondent.

---

[7]Under Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971), the Court will follow the clearly established position of a Court of Appeals to which a case is appealable. However, we will give effect to our own views in cases appealable to courts that have not yet decided the issue. Id. This case is appealable to the Court of Appeals for the Tenth Circuit absent stipulation otherwise. See sec. 7482(b)(1)(A). The Court of Appeals for the Tenth Circuit has not yet ruled on the issue of whether a taxpayer who failed to subordinate a conservation easement deed at the time of the gift of the conservation easement has met the requirements of the subordination regulation.

[*21] <u>Kaufman III</u> addressed legal issues different from the one present in this case. <u>Kaufman III</u> addressed the proper interpretation of the proceeds regulation and, in particular, the breadth of the donee organization's entitlement to proceeds from the sale, exchange, or involuntary conversion of property following the judicial extinguishment of a perpetual conservation restriction burdening the property. The Court of Appeals held that it was sufficient that the donee organization have a right to postextinguishment proceeds that was absolute against the owner-donee of the burdened property. <u>Kaufman III</u>, 687 F.3d at 27. Conservancy's right to postextinguishment proceeds was not determinative in <u>Mitchell I</u> as we ruled that petitioner had failed to meet the subordination regulation, and therefore we need not discuss the postextinghishement proceeds.

Petitioner would draw a general rule with respect to the in-perpetuity requirement from the analysis of the Court of Appeals for the First Circuit in <u>Kaufman III</u>. Petitioner states: "The regulation emphasizes perpetuating an easement's purpose as opposed to the conservation easement itself. The proceeds are protected which is the goal of the law."

We disagree with petitioner's interpretation of <u>Kaufman III</u>. Nowhere in <u>Kaufman III</u> did the Court of Appeals for the First Circuit state a general rule that protecting the proceeds from an extinguishment of a conservation easement would

**[\*22]** satisfy the in-perpetuity requirements of section 1.170A-14(g), Income Tax Regs., generally.

Petitioner further argues that there was a functional subordination of the conservation easement to the Sheek mortgage at the time of the gift to Conservancy because the partnership had sufficient funds to discharge the debt related to the Sheek mortgage at all times before the actual subordination two years later. We reject this argument. There is no functional subordination contemplated in section 1.170A-14(g)(2), Income Tax Regs., nor do we intend to create such a rule.

Petitioner also argues that we held in Carpenter I that "the regulation in paragraph (g)(6) merely creates a safe harbor," and that given the opinions in Kaufman III and Simmons, "the entire regulation could and should be read as a safe harbor." We rejected a similar argument in Carpenter v. Commissioner, T.C. Memo. 2013-172, at \*21, in which we found that the specific provisions of section 1.170A-14(g), Income Tax Regs., such as paragraph (g)(6), are mandatory and may not be ignored. We find the same to be true for the subordination regulation which like paragraph (g)(6) is a specific provision of section 1.170A-14(g), Income Tax Regs.

**[\*23]** As a result of the foregoing, we find that the holding in <u>Kaufman III</u> does not apply to this case and thus does not constitute an intervening change in law which would justify granting petitioner's motion.

IV.    <u>Colorado Law</u>

Petitioner also argues that Colorado law creates restrictions that protect the conservation easement and thus this Court should reconsider its Opinion in <u>Mitchell I</u>.  Petitioner is simply trying to argue a new legal theory with respect to Colorado law.  As we have previously stated:  "Reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or tendering new legal theories to reach the end result desired by the moving party."  <u>Estate of Quick v. Commissioner</u>, 110 T.C. at 441-442.

V.    <u>Conclusion</u>

Petitioner has not presented any newly discovered evidence or cited an intervening change in the law that would warrant granting petitioner's motion.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

**[*24]** To reflect the foregoing,

<u>An appropriate order and</u>

<u>decision will be entered</u>.