**PUBLISH**

**January 6, 2015**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAMONA L. MITCHELL,

     Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

     Respondent - Appellee.

No. 13-9003

**On Appeal from the United States Tax Court**
**(Tax Court No. 10891-10)**

Larry D. Harvey, Englewood, Colorado, for Appellant.

Bethany B. Hauser, Tax Division, Department of Justice (Francesca Ugolini, Tax
Division, Department of Justice, and Tamara W. Ashford, Acting Assistant Attorney
General, with her on the brief), Washington, D.C., for Appellee.

Before **HOLMES, MATHESON,** and **McHUGH,** Circuit Judges.

**McHUGH**, Circuit Judge.

     The Petitioner, Ramona L. Mitchell, appeals the decision of the United States Tax

Court denying a charitable contribution deduction for a donation of a conservation

easement on real property that was, at the time of the donation, subject to an unsubordinated mortgage. Specifically, she challenges the Tax Court's conclusion that the donation failed to comply with the Internal Revenue Code (the Code) and its implementing regulations. Exercising jurisdiction pursuant to 26 U.S.C. § 7482, we affirm.

## BACKGROUND

### *A. Factual Background*[1]

In 1998, Charles and Ramona Mitchell purchased a 105-acre parcel of ranch land in Colorado from Clyde Sheek. Mr. Mitchell purchased an additional, contiguous 351 acres from Mr. Sheek in 2001. The parties agreed that after an initial down payment, Mr. Mitchell would pay the balance of the purchase price in yearly installments. Mr. Mitchell signed a promissory note evidencing that obligation, which was secured by a deed of trust against the property.

The Mitchells then built their home on their 456 acres of ranch land, and called the property the Lone Canyon Ranch. In 2002, Mr. Mitchell and his family formed a family

---

[1] We take the facts, which are not in dispute, largely from the opinions of the Tax Court. *See Mitchell v. Comm'r*, 138 T.C. 324 (2012), *vacated by Mitchell v. Comm'r*, 106 T.C.M. 215 (2013) (memorandum opinion) (vacating the opinion to consider a motion to reconsider but ultimately denying the motion to reconsider). We accept the Tax Court's findings of fact unless clearly erroneous. *See Esgar Corp. v. Comm'r*, 744 F.3d 648, 652 (10th Cir. 2014).

limited liability limited partnership, C.L. Mitchell Properties, LLLP (the Partnership).[2] The Mitchells then transferred the Lone Canyon Ranch, subject to Mr. Sheek's deed of trust, to the Partnership along with other investments.

In 2003, the Partnership granted to the Montezuma Land Conservancy (the Conservancy) a conservation easement over 180 acres of unimproved land on the Lone Canyon Ranch. The parties executed a deed of conservation easement in gross (the Deed), which restricted the property for use as an open space, for wildlife, and for agricultural purposes, including agricultural businesses. The terms of the Deed purported to transfer the easement to the Conservancy in perpetuity and in a manner necessary to create a qualified conservation contribution under the Code and any applicable regulations. But what the Mitchells did not do at the time of the donation was obtain from Mr. Sheek a mortgage subordination agreement making his trust deed in the Lone Canyon Ranch subject to the Conservancy's rights in the easement.

In 2004, the Mitchells claimed a charitable contribution deduction on their 2003 joint federal income tax return based on the conservation easement granted to the Conservancy. They valued the easement at $504,000. Mr. Mitchell passed away in 2006.

In 2005, almost two years after the donation, Mr. Sheek agreed to subordinate his interest in the property to the Conservancy's easement. During the entire period between 2003 when the Partnership conveyed the easement to the Conservancy and 2005 when

---

[2] The Partnership is now known as the "Lone Canyon Ranch Limited Liability Limited Partnership."

the Mitchells obtained a mortgage subordination agreement from Mr. Sheek, the Partnership paid its debts on time and had sufficient assets to satisfy in full the amounts due under the promissory note secured by the trust deed recorded against the Lone Canyon Ranch.

In 2010, the Commissioner of Internal Revenue Service (the Commissioner) mailed a notice of deficiency to Ms. Mitchell disallowing the charitable contribution deduction for failure to meet certain requirements of the Code and its implementing regulations. In particular, the Commissioner claimed that because the Conservancy's interest in the property was subject to Mr. Sheek's unsubordinated mortgage at the time of the donation, the conservation purpose was not protected in perpetuity as required by the Code. Ms. Mitchell filed a petition with the Tax Court challenging the Commissioner's decision that same year.

### B. Procedural Background

The Tax Court denied the Mitchells' claimed charitable contribution deduction, concluding the Code and its implementing regulations strictly required that Mr. Sheek's mortgage be subordinated on the date of the donation. Ms. Mitchell sought reconsideration, but the Tax Court denied her motion. Ms. Mitchell now appeals.

## DISCUSSION

### A. *Standard of Review*

We review the Tax Court's determination and application of law de novo and its findings of facts for clear error. *Esgar Corp. v. Comm'r*, 744 F.3d 648, 652 (10th Cir. 2014).

### B. *Internal Revenue Code and Regulatory Framework*

To put our analysis in context, we first examine the Code and its implementing regulations before addressing Ms. Mitchell's arguments on appeal. "Although taxpayers are generally not permitted to deduct contributions of an interest in property less than their entire interest, Congress has permitted such partial interest contributions where the interest donated is a 'qualified conservation contribution.'" *Esgar Corp. v. Comm'r*, 744 F.3d 648, 657 (10th Cir. 2014) (quoting 26 U.S.C. § 170(f)(3)(B)(iii)); *see* 26 C.F.R. § 1.170A-14 ("a deduction . . . is generally not allowed for a charitable contribution of any interest in property that consists of less than the donor's entire interest in the property."). Commonly called "conservation easements," the contribution must meet certain statutory requirements. *Esgar Corp.*, 744 F.3d at 657. In particular, the "term 'qualified conservation contribution' means a contribution . . . of a qualified real property interest . . . to a qualified organization . . . exclusively for conservation purposes." 26 U.S.C. § 170(h)(1). The Code further provides, "A contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity." *Id.* § 170(h)(5)(A).

The Code does not define the phrase "protected in perpetuity," or otherwise describe how a taxpayer may accomplish this statutory mandate. *See id.* As such, Congress has tasked the Commissioner with promulgating rules to ensure that a conservation purpose be protected in perpetuity. *See Comm'r v. Engle*, 464 U.S. 206, 226–27 (1984) (recognizing that 26 U.S.C. § 7805 delegates to the Commissioner the authority to prescribe all "needful rules and regulations" for the enforcement of the Code); *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, ___, 131 S. Ct. 704, 713 (2011) (concluding the Treasury Department has the power to fill any gaps in the Code left by Congress); *see also In re FCC 11-161*, 753 F.3d 1015, 1040–41 (10th Cir. 2014) ("If . . . the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").

Acting pursuant to this authority, the Commissioner promulgated 26 C.F.R. § 1.170A-14(g). Paragraph 14(g)(2) provides for situations in which taxpayers—like the Mitchells—have donated property subject to a mortgage.

> In the case of conservation contributions made after February 13, 1986, *no deduction will be permitted under this section for an interest in property which is subject to a mortgage unless the mortgagee subordinates its rights in the property to the right of the qualified organization to enforce the conservation purposes of the gift in perpetuity.* For conservation contributions made prior to February 14, 1986, the requirement of section 170 (h)(5)(A) is satisfied in the case of mortgaged property (with respect to which the mortgagee has not subordinated its rights) only if the donor can demonstrate that the conservation purpose is protected in perpetuity without subordination of the mortgagee's rights.

26 C.F.R. § 1.170A-14(g)(2) (emphasis added) (mortgage subordination provision).

The regulations also provide that a deduction will not be disallowed "under . . . this section" "merely" because the interest that passes to the donee organization may be defeated by the happening of some future event, "if on the date of the gift it appears that the possibility that such . . . event will occur is so remote as to be negligible." *Id.* § 1.170.A-14(g)(3) (the remote future event provision). The provision provides the following example of an event that would constitute a remote future event: "For example, a state's statutory requirement that use restrictions must be rerecorded every 30 years to remain enforceable shall not, by itself, render an easement nonperpetual." *Id.*

Because the Commissioner promulgated these regulations pursuant to the authority granted to him by Congress, they are binding on taxpayers unless "arbitrary and capricious in substance, or manifestly contrary to the statute." *Mayo Found.*, 131 S. Ct. at 711 (quoting *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 242 (2004)). And where Congress has delegated to the Commissioner the power to promulgate regulations for the enforcement of the Code, "we must defer to his regulatory interpretations of the Code so long as they are reasonable." *Koch Indus., Inc. v. United States*, 603 F.3d 816, 821 (10th Cir. 2010).

Here, the relevant regulations, specifically the mortgage subordination provision, represent the Commissioner's reasoned efforts to implement the Code's requirement that "[a] contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity." *See* 26 U.S.C. §170(h)(5). The

requirement that an existing mortgage on property that is the subject of a charitable donation be subordinated prevents defeasance in the event of default. In this way, it is reasonably related to Congress's mandate that the conservation purpose be protected in perpetuity. Accordingly, our inquiry in the instant case focuses not on the enforceability of the regulations, but on whether they can be interpreted to entitle Ms. Mitchell to the deduction despite the undisputed fact that the Lone Canyon Ranch was subject to Mr. Sheek's unsubordinated mortgage at the time of the donation.

Ms. Mitchell makes two arguments in favor of such an interpretation. First, she notes the mortgage subordination provision contains no explicit timeframe for compliance and asks us to interpret it to allow subordination to occur at any time. Second, and in the alternative, Ms. Mitchell claims the regulations entitle her to the deduction despite any failure to comply strictly with the mortgage subordination provision. She offers two reasons why we should interpret the regulations in this way. Ms. Mitchell claims she is entitled to the deduction despite the failure to subordinate the mortgage at the time of conveyance because the Deed contained sufficient safeguards to protect the conservation purpose in perpetuity. In addition, she argues the remote future event provision acts as an exception to the mortgage subordination provision, forgiving "remote and harmless errors." Aplt. Br. at 24. In support, she points to the language in the provision, that a deduction will not be disallowed "under . . . this section" if the possibility of defeasance is so remote as to be negligible, as an indication it is an exception to the otherwise strict subordination requirement. According to Ms. Mitchell,

subordination was unnecessary in the instant case because the risk the Partnership would

default on Mr. Sheek's loan was so remote as to be negligible.[3]

Conversely, the Commissioner urges us to interpret the mortgage subordination

provision as a bright line requirement, which requires any existing mortgage to be

subordinated to the rights of the charitable organization, irrespective of the risk of

foreclosure or any alternate safeguards. The Commissioner also asserts the provision

mandates that subordination occur at the time of the donation. Otherwise, the

Commissioner posits, the easement's conservation purpose is not protected in perpetuity

because the easement is vulnerable to extinction upon foreclosure, which could occur

after donation but prior to subordination. According to the Commissioner, this risk is

contrary to the express language of the Code, which prohibits taxpayers from taking a

---

[3] Ms. Mitchell also claims the mortgage subordination provision is arbitrary and capricious, and therefore unenforceable. We need not consider this argument because it is raised for the first time on appeal and is directed at reversing the decision of the Tax Court. *See United States v. Holmes,* 727 F.3d 1230, 1237 (10th Cir. 2013) ("[W]e do not permit new arguments on appeal when those arguments are directed to reversing the district court."); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (precluding appellate review of claims forfeited before the district court that are directed at reversal unless the litigant can establish plain error—clear legal error that implicates a miscarriage of justice); *McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) (noting that where a party's arguments were forfeited before the district court, the failure to explain on appeal how they survive the plain error standard waives the arguments in this court). But even if we were to exercise our discretion to consider the argument on the merits, *see United States v. Black*, ___ F.3d ___, 14-1000, 2014 WL 6892493, at *1 n.2 (10th Cir. Dec. 9, 2014), Ms. Mitchell's challenge would fail. As explained, the mortgage subordination provision is enforceable as a reasonable exercise of the Commissioner's authority to implement the statute.

charitable deduction for such donations unless the conservation purpose is protected in perpetuity.

For the reasons explained below, we agree with the Commissioner.

### C. *Interpretation of the Regulations*

In interpreting the relevant regulations, we apply the same rules we use to interpret statutes. *Time Warner Entm't Co., L.P. v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1050 (10th Cir. 2004). We begin by examining the plain language of the text, giving each word its ordinary and customary meaning. *See United States v. Manatau*, 647 F.3d 1048, 1051 (10th Cir. 2011) (interpreting federal sentencing guidelines). If, after engaging in this textual analysis, the meaning of the regulations is clear, our analysis is at an end, and we must enforce the regulations in accordance with their plain meaning. *See Tierdael Const. Co. v. Occupational Safety & Health Review Comm'n*, 340 F.3d 1110, 1114 (10th Cir. 2003).

If, by contrast, the meaning of the regulations is not plain, we defer to the Commissioner's reasonable interpretations, even those advanced in his legal brief, unless "'plainly erroneous or inconsistent with the regulation[s],'" or there is any other "'reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.'" *See Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, ___, 131 S. Ct. 871, 880–81 (2011) (quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997)); *accord Christopher v. SmithKline Beecham Corp.*, ___ U.S. ___, 132 S. Ct. 2156, 2166 (2012) (holding an agency's interpretation of its regulations is entitled to

deference unless there exists reason to suspect the interpretation does not reflect the agency's fair and considered judgment on the matter in question and noting such suspicion exists, if, for example, the agency's interpretation conflicts with a prior interpretation, it appears the interpretation is nothing more than a convenient litigating position, or represents a post hoc rationalization advanced by an agency seeking to defend past agency action against attack (internal citations and brackets omitted)); *see, e.g.*, *Union Carbide Corp. & Subsidiaries v. Comm'r*, 697 F.3d 104, 108 (2d Cir. 2012) (giving *Auer* deference to the Commissioner's regulatory interpretation contained in his legal brief where the interpretation was consistent with the purpose of the statute); *Huffman v. Comm'r*, 518 F.3d 357, 368 (6th Cir. 2008) (holding the Commissioner's interpretation of what constitutes a "change in method of accounting" was entitled to controlling weight where not plainly erroneous or inconsistent with the regulation); *Am. Express Co. v. United States*, 262 F.3d 1376, 1381–84 (Fed. Cir. 2001) (giving *Auer* deference to the Commissioner's reasonable interpretation of the scope of the word "services" contained in a regulation).

With this framework in mind, we first address Ms. Mitchell's claim that she is entitled to the deduction because Mr. Sheek did subordinate the mortgage, albeit not until 2005. We then examine her argument that the regulations allow taxpayers to take a deduction for donations of interests in real property subject to an existing mortgage without subordination so long as the conservation purpose is protected in other ways or the risk of foreclosure is so remote as to be negligible.

-11-

**1. The mortgage subordination provision does not allow subordination at any time.**

Ms. Mitchell advances an interpretation of the mortgage subordination provision that would allow her to claim the deduction for the 2003 tax year, despite the fact the mortgage was not subordinated until 2005. In support, she notes the mortgage subordination provision contains no express timing requirement.

Ms. Mitchell's interpretation is foreclosed by the plain language of the regulation. Although she is correct the provision contains no explicit reference to the time at which subordination must occur, the provision expressly provides that subordination is a prerequisite to allowing a deduction. The provision states "no deduction *will be* permitted under this section for an interest in property which is subject to a mortgage *unless* the mortgagee subordinates its rights in the property." 26 C.F.R. § 1.170A-14(g)(2) (emphasis added). It is undisputed that in 2003, when the Mitchells requested a charitable deduction for the donation of the easement to the Conservancy, the Lone Canyon Ranch was subject to Mr. Sheek's unsubordinated mortgage. As a result, she was not entitled to a deduction under the plain language of the regulation.

Even if we were to view the regulation as ambiguous with respect to timing, the result would be no different because we must defer to the Commissioner's reasonable interpretation on this point.[4] The Commissioner's interpretation—that to be entitled to a

---

[4] The Commissioner has not asked us to defer to his regulatory interpretation under *Auer*, asserting instead that the regulations plainly required the Mitchells to subordinate the mortgage at the time of the donation. Nevertheless, we are entitled to

Continued . . .

deduction, a mortgage must be subordinated at the time of the donation—is not plainly erroneous or inconsistent with the mortgage subordination provision's plain language. Rather, it represents a reasonable interpretation of the provision's mandate that no deduction will be permitted for an interest in property that is subject to a mortgage *unless* the mortgage is subordinated. *See id.*

Nor is there any reason to suspect the interpretation does not reflect the Commissioner's fair and considered judgment on the matter. The Commissioner's interpretation is consistent with the Code, which requires the conservation purpose of the easement to be protected in perpetuity. Because a conservation easement subject to a prior mortgage obligation is at risk of extinguishment upon foreclosure, requiring subordination at the time of the donation is consistent with the Code's requirement that the conservation purpose be protected in perpetuity. *See* 26 U.S.C. § 170(h)(5)(A).

_____

Cont.

defer to the Commissioner's interpretation in the event of any ambiguity. *See Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 747 F.3d 814, 837 (10th Cir. 2014) (stating we are "'not limited to the particular legal theories advanced by the parties, but rather retain[ ] the independent power to identify and apply the proper construction of governing law'") (quoting *U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993))); *United States v. Lott*, 310 F.3d 1231, 1242 n.7 (10th Cir. 2002) (stating we may "affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court" (quotations omitted)).

Accordingly, the Tax Court correctly concluded the donation failed to comply with the mortgage subordination requirement because Mr. Sheek's mortgage encumbering the Lone Canyon Ranch was not subordinated until after the donation.

## 2. The Commissioner is entitled to demand strict compliance with the mortgage subordination provision, irrespective of the likelihood of foreclosure.

Having determined the Mitchells' donation did not strictly comply with the mortgage subordination provision, we turn our attention to Ms. Mitchell's alternate argument that she is entitled to the deduction, despite technical noncompliance with the mortgage subordination provision. In support of this interpretation, Ms. Mitchell asserts strict compliance was unnecessary due to provisions in the Deed that allegedly protect the conservation purpose in perpetuity, and because the risk of foreclosure here was so remote as to be negligible. We disagree with Ms. Mitchell's interpretation of the regulations and conclude the Commissioner is entitled to demand strict compliance with the mortgage subordination provision, irrespective of the likelihood of foreclosure in any particular case.

### a. Subordination was required despite any alleged alternative safeguards contained in the Deed.

The plain language of the mortgage subordination provision requires us to reject Ms. Mitchell's claim that she was entitled to the deduction in the absence of Mr. Sheek's subordination. As explained, the provision plainly states, "no deduction *will be* permitted under this section for an interest in property which is subject to a mortgage *unless* the mortgagee subordinates its rights in the property." 26 C.F.R. § 1.170A-14(g)(2)

-14-

(emphasis added). The provision provides for one narrow exception to this unambiguous requirement, for donations occurring prior to 1986. In the case of such a donation, a taxpayer may be entitled to a deduction without subordination if the donor can demonstrate the conservation purpose is otherwise protected in perpetuity. *Id.* But the negative implication of the express, time-limited exception is that no alternative to subordination will suffice for post-1986 donations, such as the Mitchells'. We therefore decline Ms. Mitchell's invitation to adopt a functional subordination rule for donations occurring after 1986, where neither the Legislature nor the Commissioner has done so.

b.  *The Commissioner is entitled to demand strict compliance with the mortgage subordination provision, irrespective of the likelihood of foreclosure.*

Likewise, we do not read the remote future event provision as modifying the mortgage subordination requirement. The remote future event provision provides that a deduction will not be disallowed "merely" because the interest that passes to the donee organization may be defeated by the happening of some future event, "if on the date of the gift it appears that the possibility that such act or event will occur is so remote as to be negligible." 26 C.F.R. § 1.170A-14(g)(3). That a deduction will not be disallowed "merely" because of a remote possibility of defeasance presumes the taxpayer has otherwise complied with the specific prerequisite of subordination.

In addition, the remote future event provision cannot be reasonably interpreted to include the relatively unexceptional risk of foreclosure, which exists any time a taxpayer donates an interest in property subject to a mortgage. The Tax Court has defined "so

-15-

remote as to be negligible" as "a chance which persons generally would disregard as so highly improbable that it might be ignored with reasonable safety in undertaking a serious business transaction" or "a chance which every dictate of reason would justify an intelligent person in disregarding as so highly improbable and remote as to be lacking in reason and substance." *Wachter v. Comm'r*, No. 9213-11, 2014 WL 941618, at *6 (T.C. Mar. 11, 2014) (internal quotation marks and citations omitted);[5] *see also Kaufman v. Shulman*, 687 F.3d 21, 27 (1st Cir. 2012) (holding that the remote future event provision applies to "improbable events," and that one does not establish compliance with the regulations by establishing that the risk of a future event is "unexpected"). The risk of foreclosure fails to meet this high standard.

Indeed, the provision's use of a discrete example of what qualifies as a remote future event illustrates the regulation cannot be reasonably read to apply to the risk of foreclosure. *See Begay v. United States*, 553 U.S. 137, 142 (2008) (a statute's use of examples defines the statute's intended scope). The provision describes a state statutory requirement that a use restriction must be rerecorded every 30 years and identifies the risk that sometime in the future the donee will neglect to rerecord as an example of the type of event that should not prevent a deduction. 26 C.F.R. § 1.170A-14(g)(3). This is easily distinguishable from the risk of foreclosure. The remoteness of the risk involved in

---

[5] "Rulings by the Tax Court on matters of tax law are . . . persuasive authority," particularly where "uniform administration would be promoted by conforming to them where possible." *Esgar Corp.*, 744 F.3d at 652.

the example is inherent in the unlimited rerecording requirement. The possibility that sometime in perpetuity—30, 60, 90, 120, or more years after the donation—the donee may neglect to renew the easement is considerably more remote than the risk of foreclosure under a mortgage obligation limited to a finite repayment period. As such, the risk of foreclosure "is simply too unlike the provision's listed example[] for us to believe that [the Commissioner] intended the provision to cover it." *See Begay*, 553 U.S. at 142.

Thus, the plain text of the remote future event provision indicates it does not encompass the risk of foreclosure as a remote future event. Nevertheless, Ms. Mitchell asks us to read the remote future event provision as an exception to the subordination requirement because the former provision states "[a] deduction shall not be disallowed *under . . . this section*" if the possibility of defeasance is so remote as to be negligible." *See* 26 C.F.R. § 1.170A-14(g)(3) (emphasis added). Because the mortgage subordination provision is in the same "section" of the regulations as the remote future event provision, she claims subordination is not required if the risk of foreclosure is so remote as to be negligible. We disagree.

Even if we were to assume the remote future event provision could be reasonably interpreted to have general applicability to the mortgage subordination provision, we are required to enforce the terms of the specific subordination requirement to prevent the requirement from becoming meaningless. Where the Commissioner "has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions," we will not enforce a general exception to that rule, even if the general

exception is seemingly broad enough to include it. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, ___ U.S. ___, 132 S. Ct. 2065, 2071 (2012). In such a case, to avoid the "superfluity of a specific provision that is swallowed by the general one," we require compliance with the specific provision. *See id.* (holding a detailed provision that spelled out the requirements for selling collateral free of liens governed, and rejecting debtors' argument that they should be excused from noncompliance because they complied with a different, more general, statutory provision).

Here, the existence of the subordination requirement is evidence that in promulgating the rules, the Commissioner specifically considered the risk of mortgage foreclosure to be neither remote nor negligible, and therefore chose to target the accompanying risk of extinguishment of the conservation easement by strictly requiring mortgage subordination. *See Kaufman v. Comm'r*, 136 T.C. 294, 307 (2011), *vacated in part on other grounds by Kaufman v. Shulman*, 687 F.3d 21 (1st Cir. 2012). As the Tax Court reasoned, "The drafters . . . saw taxpayers defaulting on their mortgages as more than a remote possibility. Therefore[,] they drafted a specific provision which would absolutely prevent a default from destroying a conservation easement's grant in perpetuity." *Mitchell v. Comm'r*, 138 T.C. 324, 327 (2012), *vacated by Mitchell v. Comm'r*, 106 T.C.M. 215 (2013) (memorandum opinion) (vacating the opinion to consider the motion to reconsider but ultimately denying the motion to reconsider). Accordingly, even if the use of the phrase "this section" in the remote future event provision could suggest general application to the mortgage subordination provision, we

cannot apply it in a manner that would render meaningless the more specific

subordination mandate. *See RadLAX*, 132 S. Ct. at 2071; *Fourco Glass Co. v. Transmirra*

*Prods. Corp.*, 353 U.S. 222, 228–29 (1957) ("However inclusive may be the general

language of a statute, it will not be held to apply to a matter specifically dealt with in

another part of the same enactment. Specific terms prevail over the general in the same or

another statute which otherwise might be controlling." (internal quotation marks

omitted)).

Despite Ms. Mitchell's argument to the contrary, this interpretation is also

consistent with the D.C. Circuit's decision in *Commissioner v. Simmons*, 646 F.3d 6

(D.C. Cir. 2011). There, the court applied the remote future event provision in holding

that a taxpayer was entitled to a deduction where the mortgage was subordinated but the

deeds granting the easements contained a clause allowing the donee organization to

change or abandon its rights to the easements. *Id.* at 8–9. Specifically, the D.C. Circuit

rejected the Commissioner's argument that the conservation purpose was not protected in

perpetuity due to the language in the deeds. *Id.* at 10–11. It reasoned that the donee

organization had never before abandoned its rights in an easement although it had been

holding and monitoring these types of easements since the 1970s, and the deeds

expressed the organization's intention to ensure the property "remained essentially

unchanged." *Id.* at 10. Therefore, the court held the taxpayer's deduction could not be

"disallowed based upon the remote possibility [the organization would] abandon the

easements." *Id.*

Unlike what Ms. Mitchell asks for in the instant case, the D.C. Circuit in *Simmons* did not excuse the taxpayer from complying with the mortgage subordination requirement, or excuse noncompliance with any express precondition to taking a deduction contained in the regulations. Rather, it applied the remote future event provision to allow a deduction despite the risk of noncompliance with § 1.170A-14's more general perpetuity requirements. Thus, *Simmons* does not support an interpretation of the remote future event provision that would excuse noncompliance with the mortgage subordination provision's plain and specific mandate that "no deduction will be permitted . . . unless" the mortgage is subordinated. *See* 26 C.F.R. § 1.170-14(g)(2).[6]

For all these reasons, we conclude the remote future provision cannot be reasonably read as modifying the strict mortgage subordination requirement. But even if the regulations were unclear with respect to the interplay between these provisions, Ms. Mitchell would not prevail. We are required to defer to the Commissioner's interpretation to resolve any ambiguity on this point unless it is "plainly erroneous or inconsistent with the regulations" or there is any other "reason to suspect the interpretation does not reflect the agency's fair and considered judgment on the matter." *See Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, ___, 131 S. Ct. 871, 880–81 (2011) (internal quotation marks

---

[6] Although Ms. Mitchell also directs our attention to the First Circuit's reasoning in *Kaufman v. Shulman*, 687 F.3d 21 (1st Cir. 2012), the decision provides little guidance here. The First Circuit held a taxpayer was entitled to a deduction because the donation satisfied the in perpetuity requirement, but it specifically declined to address whether the taxpayer had complied with the mortgage subordination provision or to base its holding on the remote future event provision. *Id.* at 27 & n.5.

omitted). As illustrated by the discussion above, rather than being plainly erroneous or inconsistent with the regulations, the Commissioner's interpretation—that the mortgage subordination is unmodified by the remote future event provision—is consistent with the regulation's plain meaning.

Nor is there any "reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Id.* at 881. Rather, it is reasonable for the Commissioner to adopt an easily-applied subordination requirement over a case-by-case, fact-specific inquiry into the financial strength or credit history of each taxpayer. As scholar Nancy McLaughlin explained,

> The specific requirements in the Code and Treasury Regulations establish bright-line rules that promote efficient and equitable administration of the federal tax incentive program. If individual taxpayers could fail to comply with such requirements and claim that their donations are nonetheless deductible because the possibility of defeasance of the gift is so remote as to be negligible, the Service and the courts would be required to engage in an almost endless series of factual inquiries with regard to each individual conservation easement donation.

Nancy A. McLaughlin, *Internal Revenue Code Section 170(h): National Perpetuity Standards for Federally Subsidized Conservation Easements Part 1: The Standards*, 45 Real Prop. Tr. & Est. L.J. 473, 505–06 (2010) (footnote omitted).

In sum, we conclude the regulations do not permit a charitable contribution deduction unless any existing mortgage on the donated property has been subordinated, irrespective of the likelihood of foreclosure. Therefore, the Tax Court correctly held the Commissioner was entitled to disallow the Mitchells' charitable contribution deduction

because Mr. Sheek's mortgage encumbering the Lone Canyon Ranch was not timely subordinated.

## CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the Tax Court.